Robert R. THONEN

v.

Leo W. JENKINS, President of East Carolina University, et al.

William SCHELL, Jr.

v.

Leo W. JENKINS, Individually and as President of East Carolina University and his successors and Robert Morgan, Individually and as Chairman and representative of the Board of Trustees of East Carolina University.

Civ. No. 733, 737.

United States District Court,
E. D. North Carolina,
Washington Division.

April 11, 1974.

James E. Keenan of Paul, Keenan & Rowan, Durham, N. C., for plaintiffs.

Robert Morgan, Atty. Gen. of N. C. by Andrew A. Vanore, Jr., Asst. Atty. Gen., Raleigh, N. C., for defendants.

## MEMORANDUM OPINION and ORDER

LARKINS, District Judge:

This cause is before this Court on plaintiffs' motion for damages and coun-sel fees. While students at East Carolina University, Schell wrote a letter that was published in the school newspaper, *The Fountainhead*, of which Thonen was editor-in-chief. The letter was critical of parietal regulations and closed with a vulgarity referring to the President of the University. Disciplinary action was commenced against plaintiffs by University officials, resulting in this suit in which the plaintiffs sought readmission and other appropriate relief.

### BACKGROUND PROCEDURES

The April 1, 1971 issue of *The Fountainhead* carried the vulgarity referred to above. Charges were brought against plaintiffs by school officials and the instant complaint was filed April 23, 1971. On May 21, 1971 a hearing was held on plaintiffs' motion for a temporary restraining order and reinstatement and defendants' motion to dismiss. Defendants, through counsel, requested this Court to abstain from any further action until plaintiffs had exhausted their administrative remedies at East Carolina. In compliance with such request, this Court ordered that the East Carolina Review Board convene and consider plaintiffs' case prior to May 24, 1971. On May 22 defendants informed plaintiffs' counsel, Mr. Jerry Paul, that they were appealing the order and would seek a stay pending appeal from the Honorable Clement Haynsworth in Greenville, S.C. on May 24. Paul stated he probably would not go to Greenville, but changed his mind and drove down. On May 24, defendants appealed, stating that plaintiffs had waived any right to an administrative appeal by failing to give notice of appeal with the Review Board. They did *not* go to Greenville, S.C.

On May 24 this Court allowed the defendants' stay order, and, because of impending exams, allowed plaintiff Thonen's temporary restraining order for readmittance pending the outcome of the case. This order was dismissed on October 29, 1971 when Thonen was declared academically ineligible to return to East Carolina. On June 14, 1971 the read-

mission of Schell was ordered pending the outcome of the litigation.

On February 16, 1972, 455 F.2d 977, the Fourth Circuit affirmed the May 21, 1971 order and found:

"Our examination of the record discloses that in an opinion filed in subsequent proceedings in this case, the district judge stated that the order appealed from was entered with the agreement of all counsel of record, including counsel for defendants. The accuracy of this statement is not challenged in the brief filed on behalf of defendants in this court. Indeed, the district judge's statement is neither mentioned nor is his opinion included in the appendix which defendants filed. We accept the district judge's statement as complete and accurate.

The district court had jurisdiction of the case. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). It is, therefore, axiomatic that defendants cannot appeal from an order entered with their consent unless they establish facts to nullify their consent."

On March 28, 1972 this Court entered an order allowing Schell's motion for a preliminary injunction and reinstatement. Thonen's motion was denied due to his academic ineligibility. This Court reasoned that the sanction imposed on the students was in violation of their First Amendment rights. A trial date was set to determine damages, but defendants again appealed. In a decision dated August 2, 1972, the Fourth Circuit affirmed 491 F.2d 722.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. *Counsel Fees*

The primary area of concern appears to be that of counsel fees. Plaintiffs argue that counsel fees are within the discretionary function of the Court under § 1983 actions in order to encourage individuals denied their constitutional rights to seek judicial relief. They feel that the spirit of Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), justifies applying its standards to § 1983 cases. Plaintiffs also claim that even if a "good faith" standard is used, defendants are still liable because their actions were not taken in good faith. At the rate of $40. per hour plaintiffs claim $6,267.20 plus $647.60 for the unnecessary trip to Greenville, S. C.

Defendants contend that counsel fees should only be awarded where their defense was maintained in bad faith, vexatiously, wantonly, or for oppressive reasons. 6 Moore's Federal Practice 1352 (1966 Ed.). They allege there is no evidence of their bad faith or malice at any time during the pendency of this action.

The leading recent civil rights case on counsel fees is Newman v. Piggie Park, a suit to enjoin racial discrimination at eating establishments. The Supreme Court found:

"If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."

This rationale was followed by the Fourth Circuit when it allowed counsel fees in two equal employment cases. See Lea v. Cone Mills Corporation, 438 F.2d 86 (1971) and 467 F.2d 277 (1972) ($10,000.00 not so unreasonably low); Robinson v. Lorillard Corporation, 444 F.2d 791 (1971). Of course the Supreme Court and the Circuit Court based their decisions partly on the fact

that the plaintiffs were entitled to injunctive relief and not damages.

This Court has recently allowed reasonable attorneys' fees in a housing discrimination case under 42 U.S.C. § 3612(c). See Stevens v. Dobbs, 373 F. Supp. 618 (1974). It was found that counsel fees in housing cases have been allowed to remove the burden from the plaintiffs' shoulders in seeking to vindicate a public right. See Steele v. Title Realty Company, 478 F.2d 380 (10th Cir. 1973); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Sanborn v. Wagner, 354 F.Supp. 291 (D.Md.1973); Williamson v. Hampton Management Company, 339 F.Supp. 1146 (N.D.Ill.1972). In *Dobbs*, this Court concluded:

"This Court is of the opinion that public policy demands that counsel fees be awarded in housing discrimination cases so that prejudiced individuals will not be hesitant in enforcing their rights. However [under § 3612(c)] the award must be limited to that amount plaintiff is not financially able to assume."

Defendants state that in this Circuit an award of counsel fees should be restricted to an exceptional case like Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494 (1963), and that the standard should be whether bringing the action should have been unnecessary and was compelled by the defendants' unreasonable, obdurate obstinacy. Bradley v. School Board of the City of Richmond, 345 F.2d 310 (1965). They neglect however to state the pertinent language of *Bell* which is:

"The general rule is that the award of counsel fees lies within the sound discretion of the trial court but, like other exercises of judicial discretion, it is subject to review. The matter must be judged in the perspective of all the surrounding circumstances. . . . The equitable remedy would be far from complete, and justice would not be attained, if reasonable counsel fees were not awarded in a case so extreme."

They also fail to mention that the District Court in *Bradley* found that § 1983 and the general equitable power to protect constitutional rights are not restricted by any Congressional language indicating an intention to preclude an award for fees. The Court awarded $56,419.65 in counsel fees and expenses concluding:

"Under the Civil Rights Act courts are required fully to remedy an established wrong, Griffin v. County School Board of Prince Edward County, 377 U.S. 218, . . . and the payment of fees and expenses in class actions like this one is a necessary ingredient of such a remedy." *Bradley*, 53 F.R. D. 28 at 42 (E.D.Va.1971).

■ This Court is of the opinion that the "unreasonable obdurate obstinacy" standard is no longer applicable to a § 1983 action. The movement has been toward the public policy expressed in Newman v. Piggie Park, and the allowance of attorney's fees "unless special circumstances would render such an award unjust." Newman v. Piggie Park, 390 U.S. at 402, 88 S.Ct. at 966, 19 L.Ed.2d at 1266. In fact, the earlier cases of *Bell* and *Bradley* could be read in this context. The Fifth Circuit has clearly followed this route in § 1982 cases. See Lee v. Southern Home Sites Corporation, 429 F.2d 290, which held:

"In the area of civil rights, many cases have either allowed or implicitly recognized the discretionary power of a district judge to award attorneys' fees in a proper case in the absence of express statutory provision."

On remand in *Lee*, fees were denied and plaintiffs appealed. 444 F.2d 143. In reversing, the Circuit Court found that the factors relied on in *Piggie Park* in interpreting the provision for awarding attorneys' fees applied also to suits under § 1982 (444 F.2d at page 144), and held:

"We hold that attorney's fees are part of the effective remedy a court should fashion to carry out the congressional policy embodied in Section 1982."

Of course the cases involved above dealt with racial discrimination, an area where public policy demands that prejudiced individuals receive attorney's fees so that they will not be hesitant in enforcing their rights. Nonetheless, freedom of speech was a constitutional right of paramount interest to the Founding Fathers and should be carefully guarded today. And "the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Shelton v. Tucker, 364 U. S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

Counsel fees were allowed in Stolberg v. State Colleges of Connecticut, 474 F. 2d 485 (2d Cir. 1973), to a college professor dismissed for his anti-war views. The Court found:

> "With respect to the issue of whether to award attorneys' fees, the emphasis is not placed solely on whether the defendants should suffer pecuniary punishment or be additionally deterred. Rather the objective is to assure that the plaintiff, and others who might similarly be forced to great expense to vindicate clear constitutional claims, are not deterred from securing such vindication by the prospect of costly, protracted proceedings which have become necessary only because of the obdurate conduct of the defendants."

The Circuit Court cited *Bell, Bradley,* and *Piggie Park* and seemed to follow the standards of unreasonable, obdurate obstinacy and bad faith, but clearly based its decision on the fact that the suit was unnecessary but for the defendants' conduct.

> "Because suit clearly should have been unnecessary in this case and was compelled by defendants' conduct, counsel fees should have been awarded." 474 F.2d at 490.

In Rainey v. Jackson State College, 481 F.2d 347 (5th Cir. 1973), the Fifth Circuit awarded fees in a First Amendment case. They did not mention Lee v. Southern Home Sites because they found unreasonable and obdurate obstinacy on

the part of the defendants throughout some of the proceedings. In Donahue v. Staunton, 471 F.2d 475 (7th Cir. 1972), counsel fees were awarded in a First Amendment case (1) for the benefit to the general public in encouraging free and robust public discussion, (2) so protection would not depend on relative financial positions, (3) because plaintiff's dismissal had a chilling effect on public discussion, and (4) because defendants' actions were taken to stifle criticism.

In McEnteggart v. Cataldo, 451 F.2d 1109 (1st Cir. 1971), plaintiff was awarded attorney's fees even though he lost since he had to go to court to get a statement of reasons for dismissal to which he was constitutionally entitled.

A Three-Judge Court in Alabama found bad faith, neglect, and total disregard for constitutional obligations in a reapportionment suit. See Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972). However, the Court stated:

> "Nevertheless, a finding of bad faith is not always a prerequisite to the taxing of attorneys' fees against defendants, and in this case, despite the availability of that ground, the Court has decided to base its award on far broader considerations of equity."

The Court found that plaintiffs were private attorneys general and effectuated a strong public policy, that their suit encouraged public-mindedness, and that congressional policy strongly favors the vindication of Federal rights violated under color of State law, 42 U.S.C. § 1983. This decision was affirmed by the Supreme Court. 409 U.S. 942, 93 S. Ct. 290, 34 L.Ed.2d 215 (1972).

■ This Court holds today that recent interpretations of the Civil Rights Act and public policy dictate that the standards regarding an award of counsel fees as set in Newman v. Piggie Park be applied to § 1983 cases.

In the order dated March 28, 1972 this Court found that a publication in a newspaper is a First Amendment activity in its purest form, that there was no evidence that publishing the letter in ques-

tion would substantially interfere with University discipline or disrupt the operation of the school, and that plaintiffs' First Amendment rights of freedom of speech and expression were violated by the actions taken by defendants. This decision was affirmed by the Fourth Circuit where it was held that the mere dissemination of ideas—no matter how offensive to good taste—on a State university campus may not be shut off in the name alone of "conventions of decency". It was important that the four letter word had previously been used without formal reprimand and only when it referred to the President and criticized school policy was disciplinary action taken.

These plaintiffs' rights of freedom of speech and expression are constitutionally protected. Although the vulgarity printed was not in good taste and was admitted by Schell at the hearing to have been rather immature, it was held to have been protected and therefore the disciplinary action taken should not have been commenced. An allowance of counsel fees in this instance is not meant to penalize the State, but is to encourage individuals who are held to be unjustly injured by denial of their constitutional rights to seek judicial relief. The circumstances in these cases would not render such an award unjust, as will later be explained.

Should the *Piggie Park* standard be held not to apply to § 1983 cases in this Circuit, this Court finds that the bringing of this action was unnecessary but for the actions of the defendants and the litigation was protracted by defendants' unreasonable, obdurate obstinacy. Although this Court has not concluded that defendants acted in bad faith or with malice, they certainly were unreasonable in condemning the language in the letter when it referred to the President and criticized school policy when they had in the past allowed the word to be printed. They were also unreasonable in disciplining Thonen when he printed the letter with the approval of the Publications Board. Finally, the matter should not have been pursued when it became obvious that the letter did not and would not incite lawless action or endanger the community. It appears that the letter was an excuse for the administration to discharge Thonen for his editorial policy which conflicted with the views of President Jenkins. Since the letter was rightfully published, the suit was unnecessary but for the actions of the defendants in disciplining plaintiffs.

Since the complaint was filed three years ago the defendants have continually blocked all avenues of compromise and fully litigated every detail much to the delay and detriment of the plaintiffs. By insisting upon litigation as in Bradley v. Richmond, 53 F.R.D. at 42, by totally disregarding the constitutional rights of the plaintiffs as in Sims v. Amos, 340 F. Supp. at 693–694, and by interposing a variety of administrative obstacles to thwart plaintiffs as in Bell v. Powhatan, 321 F.2d at 500, defendants have been stubborn to the point of obdurate obstinacy. In addition, the State appealed a consent Order suggested by counsel for defendants (order of May 21, 1971) and took a procedurally incorrect position resulting in plaintiffs' attorney needlessly traveling to Judge Haynsworth's Chambers in Greenville, S.C. on May 24, 1971. Although a misunderstanding is quite likely in both instances, cooperation by the defendants' counsel would have remedied both situations. The inability of defendants' legal staff to cooperate with the plaintiffs, their attorneys, and the Court has prevailed throughout this litigation.

Of course defendants have a right to appeal any Order of this Court, but to do so is costly to the plaintiffs, and if they are not justly compensated, few persons would seek redress in the courts. A college student is not normally financially prepared to fight a three year battle in the federal court against all the resources of the State. Therefore the only conclusion is that the defendants'

actions were unreasonable and obdurate and obstinate.

In Stevens v. Dobbs this Court awarded attorneys' fees pursuant to the schedule in 18 U.S.C. § 3006A(d) without the maximum limitation ($20 per hour out of court; $30 per hour in court). Such would be appropriate and reasonable here with the reservation that only one attorney will be paid per hearing and $500 will be allowed for Mr. Paul's trip to Greenville, S.C. Therefore, 101 hours at $20 per hour, 27 hours at $30 per hour, and expenses of $599.60 is a total award of counsel fees of $3429.60. Defendants should also pay any court costs plaintiffs may have incurred.

II. *Damages*

Plaintiffs contend that the actions of defendants caused them injury in that they were deprived of their constitutional rights and each asks for $25,000.00. Both plaintiffs admit they have not incurred any out-of-pocket expenses and that defendants' actions in 1971 were not what kept them from graduating. However, Schell alleges he paid counsel fees of $1400.00 and was thus financially unable to return to school the second quarter of the 1971–72 term. Thonen contends that results of the letter in 1971 have hindered his journalism career thus limiting his income, that he gave up a good job with Harpers Magazine in New York to go to East Carolina, and that class time lost due to the action taken by defendants cost him several courses. (Court's notes at hearing February 25, 1974.)

Defendants argue that plaintiffs suffered no monetary damages, and even if they did they cannot recover from university officials. They cite Kirstein v. University of Virginia, 309 F.Supp. 184 (E.D.Va.1970) and Holliman v. Martin, 330 F.Supp. 1 (W.D.Va.1971).

■ The only elements which need to be present in order to establish a claim for damages under the Civil Rights Act are that the defendant has deprived the plaintiff of a constitutional right and that the defendant's conduct was under color of state law. See Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970); Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

■ The Supreme Court has held that the existence of a statutory right implies the existence of all necessary and appropriate remedies, Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), and both federal and state rules on damages may be used. Nominal damages were allowed in a teacher dismissal case, Horton v. Orange County Board of Education, 464 F.2d 536 (4th Cir. 1972), and to a high school student dismissed because of his hair, Cordova v. Chonko, 315 F.Supp. 953 (N.D.Ohio 1970) (he was reinstated and allowed $0.01). Therefore this Court feels that the plaintiffs in this action can receive nominal damages if they have suffered any injury due to the actions of the defendants.

■ As to plaintiff Schell, this Court finds that he was financially unable to return to school the second quarter of the 1971–72 term due to counsel fees involved in this action, that this interrupted his education, and that he therefore should be compensated in the amount of $100.00.

■ As to plaintiff Thonen, this Court finds that the actions of the defendants forced him to lose class time resulting in a loss of hours in courses during the 1971 spring quarter, that such loss has hindered his pursuit of a degree and his journalism career, and that he therefore should be compensated in the amount of $100.00.

Compensation would be for a greater amount except that at the hearing it was obvious that the actions taken by East Carolina officials in April, 1971 were not the cause of these plaintiffs not obtaining their degrees. However, their actions did in fact hinder plaintiffs' degree efforts to some extent.

Now therefore, in accordance with the foregoing, it is

Ordered, that cases No. 733 and No. 737 be consolidated for judgment, and

Further ordered, that plaintiffs recover counsel fees and expenses in the amount of $3,429.60 plus costs, and

Further ordered, that plaintiff Schell recover $100.00 nominal and compensatory damages, and

Further ordered, that plaintiff Thonen recover $100.00 nominal and compensatory damages.

Let this order be entered forthwith.