Miguel PEREZ et al., Plaintiffs,
Appellees,

v.

Dr. Ismael RODRIGUEZ BOU,
Defendant, Appellant.

Miguel PEREZ et al., Plaintiffs,
Appellants,

v.

UNIVERSITY OF PUERTO RICO et al.,
Defendants, Appellees.

Nos. 77–1101 and 77–1102.

United States Court of Appeals,
First Circuit.

Argued Feb. 7, 1978.

Decided May 5, 1978.

Eli B. Arroyo, Old San Juan, P. R., with whom Geigel, Silva, Soler Favale & Arroyo, Old San Juan, P. R., was on briefs, for Dr. Ismael Rodriguez Bou and University of Puerto Rico.

Luis A. Suarez Zayas, Hato Rey, P. R., with whom Pedro J. Varela, Maria Dolores Fernos, Hato Rey, P. R., Lirio C. Torres Sepulveda, Jose E. Colon Santana, and Elba Canales, Santurce, P. R., were on briefs, for Miguel Perez et al.

Before COFFIN, Chief Judge, MOORE *, Senior Circuit Judge, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

On the morning of January 29, 1975 approximately 100 University of Puerto Rico students marched to the office of the University's chancellor, Dr. Ismael Rodriguez Bou, to protest the University's refusal to suspend classes so that students might be free to attend certain departmental meetings. Unidentified students participating in the march banged on the doors and windows of the chancellor's office and made loud remarks. The march dispersed at

* Of the Second Circuit, sitting by designation.

noon. During the period before and after the march the University campus was calm and tranquil. The brief period of banging on doors and shouting was the sole disruption.

Two days later, several students, plaintiffs in this lawsuit were suspended from the University by Dr. Rodriguez Bou because of their allegedly disruptive activities while in the march. None of the students received any form of hearing or were given any opportunity to defend themselves prior to the suspensions. Two of the students had not even participated in the march and their suspensions were lifted within a week. A hearing was held to investigate the basis for the suspensions of the other students on February 6. The hearing examiner concluded that the suspensions were unwarranted and a short time later they were revoked. Most of the plaintiffs suffered suspension for the period of twelve days.

Plaintiffs brought this suit against the University, Dr. Rodriguez Bou, and two other University officials [1] under 42 U.S.C. § 1983 alleging that their constitutional right to due process had been impaired by the summary suspensions. The district court found that the suspensions were unconstitutional, ordered them expunged from plaintiffs' academic records and ordered Dr. Rodriguez Bou and another University official jointly to pay each plaintiff one dollar damages. The court refused to award fees to the plaintiffs' attorneys because the defendants had not acted in bad faith in defending themselves against the claims against them. Both plaintiffs and defendant, Dr. Rodriguez Bou, appeal various aspects of the district court's judgment. We shall examine each one in turn.

■ Dr. Rodriguez Bou challenges the award of damages against him on the ground that he is protected by the qualified immunity doctrine detailed in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). We cannot accept this analysis. The *Wood v. Strickland* test involves both an objective and subjective component. Subjective good faith in one's conduct is not sufficient to protect an official from civil rights liability. *See Schiff v. Williams*, 519 F.2d 257, 261 (5th Cir. 1975). Courts must also evaluate whether an official reasonably should have known that his actions would violate plaintiffs' rights. *See Procunier v. Navarette*, —— U.S. ——, ——, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

Although the question is close, we believe it could properly be found that Dr. Rodriguez Bou should have known his action was unconstitutional. One week before he ordered the suspension of these students, the Supreme Court had ruled in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (regarding suspensions) that ". . . as a general rule notice and hearing should precede removal of the student from school", and that only those "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school." *Id.* at 582, 95 S.Ct. at 740. Nor was this teaching unanticipated by prior federal court holdings in Puerto Rico. In *Marin v. University of Puerto Rico*, 377 F.Supp. 613, 623 (D.C.P.R.), a three-judge court held that in cases "when the university has reasonable cause to believe that imminent danger to persons or property will exist if the student is permitted to remain on campus pending the full hearing", temporary suspension in advance of the required full hearing would be permitted. That case signalled even more stringent hearing requirements than the Supreme Court later required in *Goss*.

■ In the present case the district court specifically found that none of the defendants participated in any disruptive behavior, that the University campus was calm and tranquil on the day of the march, and that Dr. Rodriguez Bou did not receive any information which would indicate that plaintiffs posed a threat to property, persons, or the orderly carrying out of academ-

---

1. The claims against one of the other University officials were dismissed by the district court. The other official was found liable for nominal damages and has not appealed.

ic and administrative affairs at the University. Given these facts and the relevant constitutional standards requiring hearings prior to suspensions, Dr. Rodriguez Bou should have known that summarily suspending plaintiffs would violate their constitutional rights. Thus his conduct fails to meet the objective part of the *Wood v. Strickland* test which states that a person "is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected . . . ." *Id.*, 420 U.S. at 322, 95 S.Ct. at 1001.

■ We also see no merit in Dr. Rodriguez Bou's claim that the Eleventh Amendment prohibits courts from holding him liable for damages since an award against him in his representative capacity is equivalent to ordering damages to be paid from the state treasury. The district court stated in its opinion that Dr. Rodriguez Bou was to be held liable in his "official and *personal* capacity" (emphasis added). Although the district court might have been clearer in indicating that the nominal damages were the personal liability of Dr. Rodriguez Bou, we have no doubt that such was its intention. *See Thonen v. Jenkins*, 517 F.2d 3 (4th Cir. 1975). Individual and personal damage awards for civil rights deprivations do not violate the Eleventh Amendment. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Developments in the Law—Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1196 and n. 45 (1977). We do not, of course, suggest that Dr. Rodriguez Bou may not properly expect to be reimbursed by the institution in whose interest he was seeking to act, but the liability remains his.

■ Plaintiffs raise three issues on appeal. First, they contend that the district court erroneously failed to award them attorneys' fees. We agree. In denying attorneys' fees to plaintiffs, the district court apparently applied the standards set out by the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240,

95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, *Alyeska* has been superseded by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. According to the Act's legislative history, under the new law "It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by [the Act], if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)." 5 U.S.Code Cong. and Admin.News pp. 5908, 5912 (1976).

■ Defendants argue that the new Attorney's Fee Act is not applicable to this case because the effective date of the Act was subsequent to the date of the lower court's proceedings (although it preceded the lower court's judgment). However, we have previously held that the Act applies to pending cases, *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977). We also see no merit in defendant's argument that attorneys' fees should not be awarded because plaintiffs were represented by attorneys of the Puerto Rico Legal Services, Inc., a publicly funded corporation, and were not charged for the legal services they received. In *Reynolds v. Coomey*, 567 F.2d 1166 (1st Cir. 1978), we held that "[a]ttorney's fees are, of course, to be awarded to attorneys employed by a public interest firm or organization on the same basis as to a private practitioner." *Id.* at 1167. This case must thus be remanded for the determination and award of appropriate attorneys' fees to plaintiffs' counsel.

Plaintiffs also argue that the award of one dollar per plaintiff as damages is inadequate and does not represent fair compensation for the actual injuries plaintiffs suffered. Moreover, they argue that even if actual injury is not established, damages should be awarded commensurate with "the nature of the wrong" inflicted on them. *See Piphus v. Carey*, 545 F.2d 30 (7th Cir.

1976).[2] The district court explained its damage award as follows, "This valuation is not an 'evaluation' of the constitutional rights herein found to be deprived, but a symbol of this Court's finding for plaintiffs in view of the fact that we consider that the actual damages suffered by plaintiffs are minimal. Plaintiffs' suspension lasted, at the most, twelve days. Their records will be expunged and they did not lose the academic semester."

■ We have suggested that "in a civil rights action a plaintiff who proves only an intangible loss of civil rights or purely mental suffering *may* . . . be awarded substantial compensatory damages." (Emphasis added.) *Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir. 1973). However, we have never indicated that such damages *must* be awarded for either intangible loss or mental distress. In the present case, the only evidence of actual injury is plaintiffs' own statements that they experienced some psychological discomfort as a result of their suspensions. There is no evidence of loss of employment or employment opportunities, or delay in meeting academic requirements, or significant harm to plaintiffs' reputation in the community, or medically cognizable psychological distress. In such circumstances courts are not inclined to award compensatory damages for general mental distress. *See Stolberg v. Members of Bd. of Trustees for State Col. of Conn.*, 474 F.2d 485 (2d Cir. 1973), or unexplained negative effects of violations of constitutional rights, *Smith v. Losee*, 485 F.2d 334, 344–45 (10th Cir. 1973).

We prefer to respect the judgment of the district court as to appropriate damages in cases of this kind unless there is convincing evidence that the award was either too high to too low.

■ As for damages based on an intangible loss of civil rights, the impairment of rights which plaintiffs experienced was not trivial, but it must be kept in perspective.

This was not a case of officials acting out of malicious bad faith. It did not involve repeated deprivations or harassment. Plaintiffs did not suffer gross indignities or public humiliation of the kind associated with blatant racial, religious, sexual or political discrimination. Rather the evidence before the court suggests that this was nothing more than an isolated error in the administration of University discipline. The district court's nominal damage award was not out of line with the compensatory awards of other courts faced with similar situations, *see Thonen v. Jenkins*, 374 F.Supp. 134 (E.D.N.C.1974), *aff'd*, 517 F.2d 3 (4th Cir. 1975) and *Schiff v. Williams, supra.*

■ Plaintiffs' final argument is that the district court erred in dismissing the University of Puerto Rico from the suit because it was not a "person" for § 1983 purposes. There is some precedent for holding that the University is a person for § 1983 purposes, *see Marin v. University of Puerto Rico*, 377 F.Supp. 613, 623 (D.C.P.R.1974). However, we do not believe it is necessary to reach that question in the present case. The extent and nature of the Commonwealth of Puerto Rico's financial support for the University of Puerto Rico and the fact that the Commonwealth appoints the governing body of the University convinces us that the University is sufficiently an "arm" of the state, *see generally Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), to be immune from damage suits under the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Since the equitable relief plaintiffs seek has been granted without the University being a party to the suit, there is no reason at this time to decide whether or not the University can be sued as a "person" under § 1983. Such a determination would be irrelevant for the ultimate disposition of the case.

---

**2.** The *Carey* case was reviewed and reversed by the Supreme Court in *Carey v. Piphus*, —— U.S. ——, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), after the present opinion was written but before its release. Our discussion of nominal damages for mental distress and/or the intangible loss of civil rights is consistent with the Supreme Court's holding.

*The order of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.*