Ledy M. SILVA, Plaintiff,

v.

**UNIVERSIDAD DE PUERTO RICO, et al., Defendants.**

Civ. No. 93–1022(PG).

United States District Court,
D. Puerto Rico.

March 26, 1993.

Opinion Denying Reconsideration
May 3, 1993.

Dennis A. Simonpietri, Rafael A. Oliveras, Hato Rey, PR, for plaintiff.

Heber E. Lugo Rigau, Hato Rey, PR, for defendants.

**OPINION AND ORDER**

PEREZ–GIMENEZ, District Judge.

### I.  *Introduction*

This action was commenced against defendants, the University of Puerto Rico ("UPR") and Héctor M. Quiñones,[1] on January 8,

---

**1.** Since Puerto Rico is a community property jurisdiction, Quiñones' conjugal partnership was

1993. The complaint in essence charges the defendants with sexual harassment and retaliation and requests relief pursuant to (i) several civil rights statutes: 42 U.S.C. §§ 1981, 1983, 1988 and 2000e (Title VII); (ii) their local counterparts: 29 L.P.R.A. §§ 146 (Law 100), 1321 (Law 69), 155 (Law 17), 185a (Law 80), 245w (Article 24); and, (iii) the local tort statute, Article 1802 of the Civil Code, 31 L.P.R.A. § 5141.[2]

The UPR has presently moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on several grounds. First, regarding the Title VII claim, it contends that plaintiff did not comply with the necessary administrative requirements necessary to obtain access to this forum. Second, regarding the claims brought under sections 1981 and 1983, it contends that they (i) are time barred; (ii) are not applicable to it since the UPR is not a "person" under the definitions provided by these statutes; or (iii) are barred because the UPR enjoys Eleventh Amendment immunity.

## II. *The Relevant Facts* [3]

Plaintiff, Ledy M. Silva, began to work for the defendant UPR in the Purchases and Supplies Office on July 15, 1971. As of April 1990 defendant Quiñones was her supervisor. Shortly after learning of plaintiff's divorce, Quiñones started to compliment her about her looks and the way she dressed. On occasion, he expressed that he liked her. Once, he even asked her to go out with him, an invitation which she declined on the clearly emphasized ground that she would not mix work with love. Quiñones then asked for forgiveness.

Occasionally, Quiñones would approach plaintiff and gently puff on her spine area without touching her. However, on the morning hours of *August 9, 1990,* Quiñones poured the drop that made the cup overflow. He asked plaintiff to accompany him into the

storage room into an area that was not visible by fellow coworkers. Once there, he stated that he lusted for her. He then straddled against her back side, touching her body, kissing her, and telling her "This is the way I wanted to hold you." He then held her hands, kissed them, and then placed her right hand on his genital area. "See how I am," he stated. He then asked her to go out with him at noon. Once again she declined the invitation. Afterwards, Quiñones stated that because of her he had to go take a cold shower.

After the above incident, plaintiff completed her day of work, but did not return to her job. In the days to follow, she discussed the incident with a lawyer, her gynecologists, members of her immediate family and a close friend. On *August 14, 1990,* plaintiff discussed the incident with the Director of the Purchases and Supplies Office and informed her that she was in no condition to continue working there unless Quiñones would respect her. She discussed with the director the possibility that she be given leave without pay and also requested that she be transferred to another unit. The director asked her to state her petition in writing. On *August 29, 1990,* after consulting an attorney, plaintiff addressed a letter to the director discussing the sexual harassment incident and stating what she previously stated orally. The matter was then referred to the UPR's legal department. Through *September 5 to October 1990,* an investigation was undertaken; plaintiff and Quiñones were interviewed, but no other witnesses were interviewed. Eventually, plaintiff was notified that no action would be taken against Quiñones.[4]

Subsequently, plaintiff filed complaints before the Antidiscrimination Unit of the Puerto Rico Department of Labor ("AU") and the Equal Employment Opportunity Commission ("EEOC") via the former of these two agencies. The AU did not conduct its own full

---

properly included in the complaint as a defendant.

**2.** Jurisdiction over the state law claims is premised on 28 U.S.C. § 1367.

**3.** For purposes of ruling on a motion to dismiss, the Court must take plaintiff's allegations in the complaint as being a true and accurate account

of the facts of the case. *See Summit Health, Ltd. v. Pinhas,* —— U.S. ——, ——, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366 (1991).

**4.** Plaintiff does not state when she was notified nor whether this notification was oral or via letter.

fledged investigation, but merely relied on that conducted by the UPR. In turn, the EEOC relied on that by the AU. Both agencies made findings of no probable cause.

Since plaintiff did not return to work after the August 9, 1990 incident, the UPR initiated administrative actions against her for violating its regulations.[5] By doing so, the UPR ratified Quiñones' actions.

### III. *Discussion*

#### (i) *Sexual Harassment claim*

■ Via judicial interpretation, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, bars sexual harassment in the workplace. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Before resorting to a federal court for redress of a Title VII violation, a plaintiff must first leap over several procedural hurdles. One such hurdle is 42 U.S.C. § 2000e-5(e), which provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful practice occurred, or within thirty days after receiving notice that the state or local agency has terminated the proceedings under the state or local

law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the state or local agency.

Those states where a claimant must file a charge with the EEOC within one hundred eighty days are known as "nondeferral states," while those where a claimant has three hundred days to do so are known as "deferral states." Deferral states are those which have antidiscrimination laws and a state agency established or authorized to grant or seek relief from any discrimination. Pursuant to 42 U.S.C § 2000e-5(d) state agencies in deferral states have exclusive jurisdiction over discrimination claims for a period of sixty days unless the state agency disposes of the complaint beforehand.

Puerto Rico has both discrimination laws (*i.e.*, Law 100) and a state agency authorized to grant relief from such discrimination ("El Departamento del Trabajo"—the Department of Labor). In addition, the EEOC has designated the Commonwealth's Department of Labor as a state deferral agency, 29 C.F.R. § 1601.74, and has entered into worksharing agreements with the AU. Hence Puerto Rico is a deferral jurisdiction for purposes of Title VII. *Cuello Suárez v. Puerto Rico Electric Power Authority*, 798 F.Supp. 876, 886 (D.P.R.1992) (Pérez-Giménez, J.), *aff'd* 988 F.2d 275 (1st Cir.1993); *Calderón Trujillo v. Ready Mix Concrete, Inc.*, 635 F.Supp. 95, 98 (D.P.R.1986) (Cerezo, J.). *Accord Matos Molero v. Roche Products*, —— D.P.R. ——, 93 J.T.S. 6, 10315 (Naveira de Rodón, J. writing unanimously for seven members of the Puerto Rico Supreme Court). Being a deferral jurisdiction, a Title VII claimant in Puerto Rico has three hundred days to file a claim with the EEOC.[6]

An exception to Puerto Rico's three hundred day deferral filing limit is found in 29 C.F.R. § 1601.74 n. 5 which states that:

---

5. The complaint does not state exactly when the UPR took such course of conduct.

6. *See Mohasco v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (charge must be filed with EEOC within three hundred days, hence must be filed with state agency no later than day 240). *But see Isaac v. Harvard University*, 769 F.2d 817, 820–24 (1st Cir.1985) (state agency may terminate proceedings filed after day

240 earlier than sixty days so as for a plaintiff to timely file claim with EEOC); *Worthington v. Union Pacific R.R.*, 948 F.2d 477, 481–82 (8th Cir.1991) (state agency may waive its exclusive jurisdiction). Pursuant to the worksharing agreement between the EEOC and AU, the AU waives its exclusive jurisdiction over those charges received by it 241 to 300 days after the alleged date of discrimination.

The Commonwealth of Puerto Rico Department of Labor has been designated as a FEP agency for all charges except ... (3) *charges alleging violations of Title VII by agencies or instrumentalities of the Government of Puerto Rico when they are not operating as private businesses or enterprises* ... (emphasis added).

Thus, where an instrumentality of the Puerto Rico government, within the meaning of the above regulation, is charged with violating Title VII, a claimant must act within nondeferral jurisdiction time limits, that is within one hundred eighty days before the EEOC.

In *Pérez v. Rodríguez Bou,* 575 F.2d 21, 25 (1st Cir.1978) our Circuit stated via dictum that the UPR is an instrumentality of the Government:

The extent and nature of the Commonwealth of Puerto Rico's financial support for the University of Puerto Rico and the fact that the Commonwealth appoints the governing body of the University convinces us that the University is an "arm" of the state, ...

In *Amelunxen v. University of Puerto Rico,* 637 F.Supp. 426, 434 (D.P.R.1986), Judge Laffitte of this District analyzed the law creating the UPR and, relying on *Pérez v. Rodríguez Bou,* concluded that it is an "arm" of the Commonwealth. His decision was affirmed without an opinion in 815 F.2d 691 (1st Cir.1987). Subsequently, in *Pinto v. Universidad De Puerto Rico,* 895 F.2d 18, 18 (1st Cir.1990), Judge Aldrich stated in the Court's holding: "That the University cannot be liable for damages is clear." This Court's own independent analysis once again prompts the same conclusion for purposes of both the Eleventh Amendment and 29 C.F.R. § 1601.75 n. 5. The UPR is a tax exempt institution since it achieves a public purpose of the Commonwealth. 18 L.P.R.A. § 612(f). Its budget is provided by the general revenues collected by the government of Puerto Rico. 18 L.P.R.A. § 621a. Its governing board is appointed by the Governor with the advise and consent of the Senate. 18 L.P.R.A. § 602(b)(1).

It is true of course, that the UPR possesses various characteristics of an autonomous body. It has academic and administrative autonomy to achieve its objectives as provided by the law which created it and subsequent regulations. 18 L.P.R.A. § 603(a). It may control its own properties and funds, may enter into contracts, and has the authority to sue and be sued. 18 L.P.R.A. § 602(f)(1). Its debts are not considered those of the Commonwealth nor its municipalities. 18 L.P.R.A. § 612. However, in light of its financial and political dependence on the Commonwealth's government, these powers are insufficient to render the UPR an independent being. *See In Re San Juan Dupont Plaza Hotel Fire Litigation,* 888 F.2d 940, 944 (1st Cir.1989) (Puerto Rico Tourism Company is an "arm" of the Commonwealth).

Wherefore, this Court holds that pursuant to 29 C.F.R. § 1601.74 n. 5, the EEOC filing deadline for a sexual harassment claim against the UPR—an instrumentality of the Commonwealth—is 180 days.[7]

### (ii) *Retaliation claim*

■ Title 42 U.S.C. § 2000e–3 forbids an employer from retaliating against an employee who has made a charge under Title VII against the employer. Just as when alleging sexual harassment, a claimant alleging retaliation also must meet the administrative requirements of § 2000e–5 before resorting to this forum. However, pursuant to 29 C.F.R. § 1601.74 n. 5, the Commonwealth's Department of Labor is not deemed a deferral agency for this specific type of claim. In plain English this means that a retaliation claimant in Puerto Rico only has 180 days to file a claim before the EEOC.

### (iii) *Application of the filing requirements to plaintiff's claim*

■ The Court must now determine whether plaintiff filed her charge with the EEOC within the requisite one hundred

---

**7.** Astonishingly, the UPR in its memorandum of law does not even mention this regulation which is of benefit to it.

eighty days.[8] The date of the sexual harassment was either 1) August 9, 1990—the day of Quiñones' offensive behavior[9], or 2) the unspecified day subsequent to August 9 when the UPR commenced retaliatory administrative proceedings against plaintiff.[10] Plaintiff nevertheless fails to indicate when exactly she filed her claim before the AU or EEOC. The Court, however, notes that the UPR along with its motion to dismiss presented a copy of plaintiff's charge before the AU dated July 2, 1991. Clearly, if this is the first instance where plaintiff sought relief via an agency, plaintiff did not file her August 9, 1990 sexual harassment claim before the EEOC within one hundred eighty days of the incident. Nor in all likelihood would she have filed a claim for the latter retaliation incident within the same time period.[11]

At this early juncture it would nevertheless be unfair to consider the UPR's documentary evidence and dismiss the complaint on evidentiary grounds, since plaintiff has had no notice nor adequate time to respond to the UPR's contention. *Cf. Chaparro–Febus v. Local 1575*, 983 F.2d 325, 332 (1st Cir.1992). Wherefore, the Court hereby notifies the parties that it shall treat the present motion to dismiss as one for summary judgment. The parties are thus granted until April 9, 1993, to present evidence that the charges before the AU/EEOC were brought in a timely/untimely fashion.[12]

8. In *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that this period is subject to waiver, equitable tolling or estoppel since the filing deadline was not a jurisdictional prerequisite to a federal suit. However, in *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505–06, 66 L.Ed.2d 431 (1980), the Court held that internal grievance proceedings do not suspend Title VII's statutory period. *See also Cajigas v. Banco de Ponce*, 741 F.2d 464, 469 (1st Cir.1984). Thus, the fact in this case that the University conducted an investigation of the August 9, 1990 incident, in and of itself, will not toll the administrative filing deadline.

9. Although Quiñones was the actor on said occasion, the UPR would be liable for his acts on *respondeat superior* grounds if as plaintiff alleges, the UPR had no available avenues for bringing the complaint before the appropriate officials. *See Meritor*, 477 U.S. at 71–72, 106 S.Ct. at 2407–08.

*(iv) Section 1981 and 1983 claims*

■ Unlike Title VII, sections 1981 and 1983 do not contain Congressional waivers of states' Eleventh Amendment immunity. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 885 n. 6 (1st Cir.1988) (§ 1983); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir.1981) (§ 1981). Since the UPR is an "arm of the Commonwealth" so as to trigger the Eleventh Amendment's protective force field[13], *see Pinto v. University of Puerto Rico*, 895 F.2d at 18; *Pérez v. Rodríguez Bou*, 575 F.2d at 25, the Court must dismiss these claims against the UPR.[14] Likewise, since Article 1802 of Puerto Rico's Civil Code contains no waiver of sovereign immunity, the Court must also dismiss said claim.

### IV. *Conclusion*

In sum, the Court hereby **ORDERS** the following:

1. Plaintiff's Title VII claim against the University of Puerto Rico shall be held in **ABEYANCE** pending a determination on whether plaintiff complied with the necessary administrative prerequisites to bringing suit before this forum. The parties are **GRANTED** until April 9, 1993, to present properly supported motions for summary judgment regarding such issue.

10. This incident would constitute a separate Title VII violation.

11. The AU charge form presented by the UPR mentions only the August 9, 1990 incident. This would seem to indicate that the retaliation incident was never the subject of a formal charge before the AU.

12. The Court previously ordered the AU to make available to counsel all documentation related to this case.

13. The fact that the UPR has the power to sue and be sued does not strip it of its Eleventh Amendment immunity. Such a waiver exists only where it is manifest. *Dupont Plaza*, 888 F.2d at 945.

14. In view of this, it becomes unnecessary to determine whether plaintiff's § 1981 and § 1983 claims against the UPR are time barred, or whether the UPR is a "person" under these statutes.

2. Plaintiff's claims against the University of Puerto Rico under 42 U.S.C. §§ 1981, 1983 and 1988 are hereby **DISMISSED** pursuant to Fed.R.Civ.P. 12(b)(6).

3. Plaintiff's pendent claim against the University of Puerto Rico under Article 1802 of the Civil Code is also **DISMISSED** pursuant to the above cited rule.

4. Plaintiff's pendent claims against the University of Puerto Rico under the Commonwealth's labor laws are held in **ABEYANCE** pending the determination discussed in paragraph 1 of this conclusion. If the Title VII claim is dismissed, these claims shall also be dismissed.

**IT IS SO ORDERED.**

## OPINION AND ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION

On March 26, 1993, this Court issued an opinion and order wherein it ruled that pursuant to 29 C.F.R. § 1601.74 n. 5 a claimant alleging sexual harassment by the University of Puerto Rico ("UPR") must file his or her claim with the EEOC within one hundred eighty days from the alleged violation. *See* page 1003. The above cited regulation states that:

> The Commonwealth of Puerto Rico Department of Labor has been designated as a FEP agency for all charges except ... (3) *charges alleging violations of Title VII by agencies or instrumentalities of the Government of Puerto Rico when they are not operating as private businesses or enterprises* ...

This Court following First Circuit precedent [1] concluded that the UPR is an instrumentality of the Commonwealth rather than a government created private business, thus falling within the verbiage of said regulation.[2] Although a very close call (since the UPR possesses many attributes of an autonomous body), the Court nevertheless concluded that

"in light of [the UPR's] financial and political dependence on the Commonwealth's government these powers are insufficient to render the UPR an independent being." *Id.* at 1004.

The plaintiff presently asks the Court to reconsider the above ruling on two grounds. First, that it is incorrect. Second, that even if correct, the EEOC's regulation violates the Equal Protection Clause of the Constitution as it discriminates against public workers. The Court shall discuss each of these two contentions separately.

### (i) *The UPR is an instrumentality of the government*

Plaintiff acknowledges the three Circuit decisions standing for the prop that the UPR is an arm of the Government. However, it contends that this Court erroneously followed the analysis used by the First Circuit in those three cases which were brought pursuant to 42 U.S.C. § 1983. Rather, it should have followed that of the Puerto Rico Labor Relations Board ("PRLRB") in *Universidad de Puerto Rico v. Asociación Puertorriqueña de Profesores Universitarios,* Nos. P–87–12, D–91–1171. In said case, after an extensive analysis of the UPR's faculties and powers, the PRLRB concluded that the UPR acts as a private enterprise so as for its employees to unionize and enjoy the right to collective bargain under the Commonwealth's labor relations law, 29 L.P.R.A. § 41 *et seq.*[3]

The EEOC offers no guidance whatsoever as to what institutions fall within the scope of 29 C.F.R. § 1601.74 n. 5. Nor, as far as this Court can tell, does the Federal Register contain any background information on said regulation's promulgation. The Court, however, notes that two other footnotes to § 1601.71 contain deferral status exceptions. Footnote 2 states:

> ed by this regulation is the Puerto Rico Ports Authority. *See Royal Caribbean v. Puerto Rico Ports Authority,* 973 F.2d 8, 10–12 (1st Cir.1992).

**1.** *See Pinto v. University of Puerto Rico,* 895 F.2d 18, 18 (1st Cir.1990); *Amelunxen v. University of Puerto Rico,* 815 F.2d 691 (1st Cir.1987); *Pérez v. Rodríguez Bou,* 575 F.2d 21, 25 (1st Cir.1978).

**2.** An example of a government instrumentality operating as a private business hence not affect-

**3.** This decision is presently on appeal before the Puerto Rico Supreme Court.

The Arlington Human Rights Commission has been designated as a FEP agency for all charges except charges alleging a violation of title VII by a government, government agency, or political subdivision of the state of Virginia.

Footnote 3 in turn states:

The Austin (TX) Human Relations Commission has been designated as a FEP agency for all charges except charges alleging a violation of Title VII by a government, government agency, or political subdivision of the State of Texas.

The language of these two footnotes regarding nondeferral status is more encompassing than that found in Footnote 5. Thus, it is evident that the EEOC could have employed broader language so as to include other government entities as deferral exceptions when promulgating the regulation applicable to Puerto Rico. However, it did not. Wherefore, the intent behind the promulgation of Footnote 5 is, in this Court's opinion, clear from its language.

In interpreting what an "instrumentality not acting as private business" precisely means, this Court holds that our Circuit's § 1983 jurisprudence is of greater weight than the opinion of the PRLRB. First, the purpose of Title VII is more akin to that of § 1983 than to that of Puerto Rico's Labor Relations Law. Stated more breviloquently, § 1983 and Title VII are remedial civil rights statutes. The Puerto Rico Labor Relations law, on the other hand, while affording workers rights such as that to unionize, does not

provide a remedy akin to that offered by civil rights statutes.[4] Second, the amendments to Title VII via the Civil Rights Act of 1991[5] in essence have transformed Title VII into the functional equivalent of § 1983 for a case such as this one. Title VII now affords a plaintiff the same panoply of remedies as § 1983, such as the right to jury trial and compensatory damages.[6]

Wherefore, the Court shall not overturn its prior conclusion that pursuant to § 1601.74 n. 5, plaintiff had 180 days from the alleged violation to file her claim with the EEOC.

### (ii) *Equal protection claim*

At the outset, the Court notes that plaintiff's equal protection claim rests upon discrimination *against public workers.* Such a group of individuals is not a suspect or quasisuspect group so as to trigger either a strict or middle tier scrutiny analysis. Hence a *rational basis* analysis is proper in this instance. Under such a test, the regulation at bar will be upheld as long as any set of facts could suffice to create a rational relationship between it and the EEOC's legitimate objectives in its promulgation. *See Montalvo–Huertas v. Rivera–Cruz,* 885 F.2d 971, 978 (1st Cir.1988).[7]

After examining and considering 29 C.F.R. § 1601.74 n. 5, the Court concludes that said regulation does not violate the Equal Protection Clause. True, as the plaintiff points out, it creates several categories of Puerto Rican employees solely for Title VII purposes.[8]

---

4. Other local statutes strive for such a goal, for example Law 100, 29 L.P.R.A. § 146—Title VII's state counterpart, which forms the basis of a pendent claim in this lawsuit.

5. P.L. No. 102–166, 105 Stat. 1071 (1992).

6. The Civil Rights Act does not allow punitive damages against a government agency. 105 Stat. at 1073.

7. Such legal analysis is premised on the assumption that both state and federal governments, as elected bodies by the people for the people, are better acquainted than a tribunal with the numerous community, state or nationwide factors and values which prompt the enactment of socioeconomic legislation. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). In the case of Puerto Rico,

however, this doctrine has an ironic twist. While the Commonwealth is afforded wide latitude in legislating as to its local affairs, its citizens do not elect representatives for the federal Congress nor cast presidential votes. Nevertheless, the vast majority of laws enacted by Congress and regulations promulgated by federal agencies are in full effect in the Island.

8. According to plaintiff these are: (i) employees who directly work with the government of Puerto Rico. These have 180 days to file a claim before the EEOC; (ii) employees who work for state agencies or instrumentalities which operate as private businesses. These have 300 days to file their claim; (iii) employees who work for instrumentalities such as the UPR which, although operate as autonomous bodies, are economically dependent on the government. These have 180 days to file their claim; and (iv) all other employ-

This, however, in and of itself is insufficient to create an equal protection violation, territorial uniformity not being a constitutional requirement. *McGowan v. Maryland*, 366 U.S. 420, 427, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961); *Montalvo–Huertas* at 979.[9]

Going one step further, this Court cannot hold that the regulation at bar serves an irrational purpose by crafting several deferral exceptions. First, if Puerto Rico as a whole were a non deferral jurisdiction, every Title VII claimant would only be afforded 180 days to file his or her EEOC complaint. For most types of Title VII claims nonetheless, the EEOC has deemed it appropriate that the AU act as deferral agency and be given the first shot at resolution of the controversy, hence a 300 day filing deadline. Thus, rather than abridging a claimant's procedural rights, § 1601.74 n. 5 sets forth four specific types of Title VII claims which must be directly pursued via the EEOC within 180 days.

Second, this Court must give deference to the EEOC's administrative erudition. An agency's regulation promulgated to enforce its own statute is deemed valid so long as it does not run counter to the statute's intent. *See King v. Collagen Corp.*, 983 F.2d 1130, 1135 (1st Cir.1993). Why force Title VII claimants to seek redress via Puerto Rico's own AU in instances where judicial alter egos of the Commonwealth (*i.e.*, the UPR) allegedly have wronged them? The EEOC, in promulgating § 1601.74 n. 5, presumably deemed it best that claimants in such instances seek redress for the violation of their federal rights directly via the EEOC.

As stated earlier in this opinion, we can only guess the precise motive behind the EEOC's promulgation of § 1601.74 n. 5. However, this Court will not substitute its own judgment for that of the EEOC where the instant regulation serves a plausibly rational purpose, one wholly consistent with that of Title VII. Wherefore plaintiff's equal protection claim also fails.

ees who work for private persons. These have 300 days to file their claims.

(iii) *Other pending matters*

Plaintiff, via motion, has indicated that the Puerto Rico Department of Labor has not yet fully complied with this Court's order requiring said agency to produce the entire files related to plaintiff's claim. In view of this, the Court finds that plaintiff is entitled to an extension of time to present evidence that her charge before the EEOC was timely. The Court however reminds the Antidiscrimination Unit that it is under order to produce the documents requested by plaintiff.

Finally, the Court notes that plaintiff contends that even if her charge before the EEOC was untimely, the UPR did not post adequate notices of her Title VII rights, hence equitably tolling the limitations period in this litigation. *See Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 73 (1st Cir.1982); *Linn v. Andover Newton Theological School*, 642 F.Supp. 11, 13–14 (D.Mass.1985). Such contention will best be resolved once plaintiff, after receiving all the requested documents and information obtainable via discovery, files an opposition to the UPR's motion for summary judgment.

(iv) *Conclusion*

In sum, the Court holds the following:

(i) Plaintiff's motion for reconsideration (docket # 17) is hereby **DENIED.**

(ii) Plaintiff's motion for an extension of time to oppose the UPR's motion for summary judgment (docket # 16) is hereby **GRANTED.** Plaintiff shall file her motion on or before Monday, May 31, 1993. Any reasonable delay for doing so must be notified to the Court on or before said date.

(iii) The UPR's motion for a protective order (docket # 3) is hereby **DENIED.** The UPR is to answer all interrogatories and to produce the documents requested by plaintiff on or before Friday, May 14, 1993. Any reasonable delay for complying with said request shall be notified to the Court on or before this same date.

9. Nothing prevents Congress nor the EEOC from enacting uniform laws or regulations for all states and territories.

(iv) The UPR and Antidiscrimination Unit are hereby reminded that they are under an order to comply with plaintiff's discovery request (*see* docket # 10). Failure to comply with said order may result in contempt of Court.

(v) The Clerk of Court shall mail a copy of this opinion and order to the Antidiscrimination Unit to the person and address on this Court's March 1, 1993 order (docket # 10).

**IT IS SO ORDERED.**