John Fulcher HARRIS, et al. Plaintiffs,

v.

Hector RIVERA CRUZ, et al.
Defendants.

Civ. No. 88–0692 (JP).

United States District Court,
D. Puerto Rico.

March 27, 1989.

Arturo Aponte Parés, Hato Rey, P.R., for plaintiffs.

María L. Jiménez Colón and Rebeca F. Rojas, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The plaintiffs in this case have petitioned for preliminary permanent injunctions against the Real Estate Examining Board's changing its policy of giving the real estate broker's exam in both English and Spanish to a policy of giving the exam only in Spanish. The complaint stated a cause of action under 42 U.S.C. § 1983 and the U.S. Constitution for deprivation of plaintiffs' equal protection of the laws, and the Court so ruled in a hearing on July 15, 1988. Despite a request by the Court to submit argumentation on the fourteenth-amendment issues, and despite quite some time having elapsed, the defendants have chosen not to address the merits of the case. Instead, they have argued first that the plaintiffs have not sufficiently pleaded jurisdiction and second that the issue is moot.

The sufficiency of the pleading with respect to the equal protection challenge was established on July 15, 1988, when the Court requested briefs on that issue. If the defendants require a more explicit statement, the Court offers one here: Under Fed.Rule Civ.Pro. 8(a) and 8(f), the plaintiffs have sufficiently stated the grounds upon which the Court's jurisdiction depends. Although the complaint does not use the words "fifth amendment" or "fourteenth amendment," the complaint as a whole plainly claims a violation of the equal protection clause.

■ The defendants' second argument, mootness, is not supported by any evidence or affidavit in the record. The defendants have merely stated in their brief that the next real estate broker's exam (after September 18, 1988) would be given in both languages. Assuming that this representation by counsel *could* be supported by affidavit or otherwise, the fact would not make the controversy moot. This appears to be a case in which the conduct of the defendants would be "capable of repetition, yet evading review." *Ainsworth Aristocrat Intern. v. Tourism Co. of P.R.*, 693 F.Supp. 1354 (D. Puerto Rico 1988); *Boston Teachers Union, Local 66 v. Edgar*, 787 F.2d 12 (1st Cir.1986). The exams are given on an irregular schedule at least twice a year. The board has not announced that all further exams would be given in English; it has only represented that one more would be. The plaintiffs have evinced an intention to take exams until they pass. The Court concludes, therefore, that these plaintiffs could be aggrieved by the same conduct in the future, and that the defendants could take similar steps in an attempt to nip in the bud the vindication of their rights. Thus the decision of the board of examiners to give another exam in both languages fails to bar the plaintiffs' complaint on grounds of mootness.

■ The Court must therefore proceed to consider the plaintiffs' request for a preliminary injunction. The criteria for granting such interim relief were summarized recently by the Court of Appeals:

1. The likelihood of merits' success;

2. The potentiality for irreparable injury;

3. A balancing of the relevant equities (most importantly, the hardship to the non-movant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and

4. The effect on the public interest of a grant or denial of the restrainer.

*Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 892 (1st Cir.1988).

1. *Likelihood of Success*

The plaintiffs have the difficult task of proving that the policy here challenged cannot survive "minimal scrutiny" under the Equal Protection Clause. *See Zobel v. Williams*, 457 U.S. 55, 60, 102 S.Ct. 2309, 2312–13, 72 L.Ed.2d 672 (1982). The Board's policy "will survive that scrutiny if the distinction it makes rationally furthers a legitimate state purpose." *Zobel*, 457 U.S. at 60, 102 S.Ct. at 2313. In this case, the distinction is between real estate brokers who speak Spanish and those who speak only English. The purposes for the distinction, according to the president of the Real Estate Examining Board, Maria Socorro Cintrón, are to ensure the broker's knowledge of documents that exist only in Spanish and to ensure proper negotiations between brokers and Puerto Ricans, who are generally more familiar with Spanish.

The plaintiffs' contentions challenge both the purposes and the means of the policy. The plaintiffs argue that, as Ms. Socorro admitted on cross-examination, more of the necessary documents in the real estate broker's profession exist in English than in Spanish. If this fact should be proved in a trial on the merits, it would appear that the purpose of ensuring easy comprehension of Spanish documents, and not of the predominant English documents, is not legitimate. On the other hand, if the purpose were to ensure comprehension of *all* important documents, eliminating the English broker's examination would not be a rational means to that end. Finally, if the purpose of the policy is to ensure communication between residents of Puerto Rico and their real estate brokers, it is not clear that eliminating monolingual, English-speaking brokers would rationally advance that purpose—especially in light of the plaintiffs' desire to ply their trades in geographical areas that comprise numerous monolingual, English-speaking residents of Puerto Rico.

The government of Puerto Rico will not be compelled in the future to adhere to Ms. Socorro's articulations of the state's purpose. At this point, however, the state has formulated no other interests. Based on the arguments heard so far, the Court con-

cludes that the plaintiffs reasonably could succeed on the merits.

### 2. *Irreparable Injury*

Plaintiffs' injuries are obviously irreparable. If they are permanently deprived of the previously granted benefit of being examined in the English language, they will be deprived of their livelihoods for an extended time. The plaintiffs' only choices would be to leave Puerto Rico or to wait until their Spanish improves to professional-level proficiency.

### 3. *Balance of the Equities*

Clearly the risk of hardship is greater to the plaintiffs than to the government. The plaintiffs stand to suffer irreparable harm, while the defendants' only risk is to continue a practice that has been in place for years. The defendants shall incur the greater expense of administering two exams, but this cost does not tip the balance in its favor.

### 4. *Public Interest*

The public clearly has an interest in reasonable cost-cutting measures by the government, and the Board's new policy appears to be less expensive than the old. The public has an overriding interest, however, in eliminating discrimination for or against its members based upon a category such as language. In the United States, there is no official language, and if prudence and wisdom (and possibly the Constitution) prevail, there never shall be. Attempts to establish an official language to the detriment of the rights of a linguistic minority amount to unconscionable bigotry. This is true in Florida and California, where the bigotry is aimed at speakers of Spanish, and it will be true in areas where the minority language is English.

A narrow and insular policy that erects unreasonable barriers to success for one of two officially recognized language groups[1] damages the legitimate interests of the linguistic minority. And with the Board's policy, there is no benefit to the majority

that might serve as a counterweight. Spanish linguistic unity in real-estate transactions benefits the public in only the most short-term perspective. Such a policy ignores the inevitable and increasing need for consumers to have the protection of agents with the ability to communicate in the language of real estate, economics, and business in the United States. The economy of Puerto Rico is entwined with that of the United States, particularly in real estate. Mortgages on properties are typically given by federally insured institutions and guaranteed by federal agencies. The mortgages are bought and sold in the United States, and the consumers' rights are protected by such federal legislation as the Equal Credit Opportunity Act and the Financial Privacy Act. The Court can see no public benefit deriving from a policy that appears, on the evidence so far presented, to damage the interests of both the plaintiffs and the public.

### 5. *Conclusion*

For the foregoing reasons, the request for a preliminary injunction is GRANTED.

The Court notes that the plaintiffs' petition was filed almost one year ago, on April 12, 1988. The extensive lapse of time is due primarily to the lack of assistance to the Court from counsel for both parties. Because of this delay, there is a possibility that the controversy will become moot before an appeal of the injunction can be heard in the Court of Appeals for the First Circuit. The Court therefore ORDERS the parties to file any appropriate motions, supported by affidavit or other evidence, with respect to mootness within ten days after the injunction is entered. These motions shall be filed pursuant to Fed.Rule Civ.Pro. 59(e).

The plaintiffs' petitions for a permanent injunction and for other relief shall be considered after further proceedings. The Court accordingly SETS an Initial Scheduling Conference for April 20, 1989, at 2:00 p.m. The Clerk shall issue the standard Initial Scheduling Conference Call, and the

---

1. 1 L.P.R.A. § 51.

**32**

parties shall be prepared fully to expedite the resolution of this case.

### INJUNCTION ORDER

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and according to the opinion and order, above, IT IS HEREBY ORDERED:

That Maria Socorro Cintrón, Eddie Nieves, Mary Jo González, Federico Cedo, and Eudemio Cabanillas, individually and in their official capacities as members of the Junta Examinadores de Corredores de Bienes Raices; and Héctor Rivera Cruz, both individually and in his official capacity as Secretary of Justice, are restrained from providing the real estate broker's examinations on a Spanish-language-only basis and from offering the examination on any other basis than the administration of completely equivalent exams in both Spanish and English.

The Clerk shall act accordingly.

IT IS SO ORDERED.