John Fulcher HARRIS, et al., Plaintiffs, Appellees,

v.

Hon. Hector RIVERA CRUZ, et al., Defendants, Appellees.

Joanna Dimarco Zappa, Plaintiff, Appellant.

No. 93–1630.

United States Court of Appeals, First Circuit.

Argued Nov. 4, 1993.

Decided March 29, 1994.

Arturo Aponte Pares, for appellant.

Reina Colon De Rodriguez, Acting Deputy Sol. Gen., Dept. of Justice, with whom Carlos Lugo Fiol, Acting Sol. Gen., was on brief, for defendants.

Before BREYER, Chief Judge, TORRUELLA and BOUDIN, Circuit Judges.

BOUDIN, Circuit Judge.

This case presents a novel dispute in which jurisdictional and merits issues are entangled with a question of decree interpretation. The course of the litigation, which must be traced in some detail in order to understand the issues, may also be unique. We certainly hope so and regret that this litigation, already prolonged by the parties' antics, requires one more round.

## I.

In April 1988, Joanna Dimarco Zappa ("Dimarco") joined as co-plaintiff in a pending civil lawsuit brought by another individual against members of the Real Estate Examining Board in Puerto Rico ("the Board").[1] The Board had awarded Dimarco a failing grade in the examination given on October 31, 1987, for a real estate broker license in Puerto Rico. Dimarco contended that the examination had been given in English and Spanish and that the Board had followed a policy of making the English version, which Dimarco took, substantially more difficult than the Spanish version.

The suit was brought under 42 U.S.C. § 1983, and the complaint (generously construed) asserted that the Board's policy and action violated constitutional guarantees. At least by implication, Dimarco sought injunctive relief to compel issuance of the license, and she expressly sought damages including compensation for lost income in the amount of $100,000 per year. The complaint also alleged that the Board proposed to give future examinations only in Spanish, and Dimarco sought an injunction to require that it also be given in English.

---

1. Neither of the parties named in the caption remain in this case. The original plaintiff, John Harris, is not a party to this appeal. Similarly, the first named defendant, Hector Rivera Cruz, the Secretary of Justice, was dismissed from the suit.

After a hearing in July 1988, the district court in March 1989 issued a preliminary injunction requiring the Board to continue to offer the examination in English, as well as Spanish, and to assure that the two versions were equivalent. *Harris v. Rivera Cruz,* 710 F.Supp. 29 (D.P.R.1989). The Board appealed, a cross appeal was filed, and both appeals were later withdrawn. The Board made repeated, and sometimes frivolous, efforts to have the case dismissed.

In August 1989, after a pretrial conference and waiver of jury trial by both sides, the court ordered both sides to submit briefs and evidence concerning each plaintiff's actual performance on the October 31, 1987, examination. The plaintiffs complied in September 1989. Their analysis purported to show which questions differed significantly in English and Spanish and how the plaintiffs' own grades had been lowered by mathematical errors; specifically, certain true-false questions had been answered differently by the two plaintiffs but *both* answers had been graded as wrongly answered. The Board submitted no analysis or rebuttal.

Then on March 19, 1990, the parties attended a status conference. On March 22, 1990, the court entered a one-paragraph "status conference order" that concluded with the following sentence: "The parties have agreed that the examination will be given in English, and that the only remaining issue is whether the plaintiffs passed this exam." Nothing in the order refers to Dimarco's damage claim. No transcript of the conference has been supplied, and quite possibly no reporter was present.

Nothing more occurred until November 1990 when Dimarco filed a motion asking the court to enter judgment determining that Dimarco had passed the examination with a score of 97 points out of 100. The motion argued that more than a year had passed since Dimarco's evidence had been filed and no rebuttal had been offered by the Board. The Board did not respond. On April 23, 1991, the district court entered an order determining that Dimarco had passed the examination and directing the Board to issue her a license. The order stated that "because both parties have previously agreed that this was the only issue remaining in the case, [j]udgment shall be entered accordingly."

On the same day, the court entered a "Judgment" which decreed that "[j]udgment be entered in favor of the plaintiffs … as both of these plaintiffs have passed the realtor's examination" and "ordered" that the Board issue real estate broker's licenses to the plaintiffs. Once again, there was no reference to damages. Nothing in the April 23, 1991, order or the separate judgment stated that the judgment was final as to all claims or that the case was formally complete. However, on May 2, 1991, Dimarco's counsel filed a memorandum seeking costs, a portion of which were later awarded.

On May 9, 1991, the Board filed a motion purportedly under Fed.R.Civ.P. 59(e) claiming that the injunction was improper because other requisites, apart from passage of the examination, had to be satisfied before a license could be granted. The Board also asserted that plaintiffs had not exhausted their administrative remedies. The court denied the motion by order filed July 1, 1991; it noted that exhaustion was not required in section 1983 actions and it observed again the parties had earlier agreed that "the only remaining issue before the Court was the issue of whether the plaintiffs had passed this examination."

Instead of issuing a license, the Board then filed a new appeal to this court, which was later withdrawn. Dimarco filed a motion to hold the Board in contempt. The Board then issued a license to Dimarco in August 1991 but the Board noted on the face of the license that it was given by court order. Dimarco filed a new contempt motion in February 1992. In March 1992 the court ordered that an undefaced license be issued. Once again the Board did nothing until, after another contempt motion and an order to show cause from the court, a clean license was finally issued to Dimarco in August 1992.

On January 5, 1993, Dimarco requested a date for trial on the issue of damages. The court clerk set a trial date but the Board asked the court to reconsider, arguing that in the March 19, 1990, status conference, "the

parties agreed that the examinations at issue in this case would be given in English and that the only remaining issue in the case was whether the plaintiffs had passed the exams." Dimarco responded opaquely that damages had been requested from the outset and had never been adjudicated by the court. After a status conference, the court on May 12, 1993, entered an order, which says in part:

> The Court [in the May 11, 1993, status conference] clarified with the parties that since Judgment was entered in this case based on a settlement between the parties, without the imposition of damages, and the plaintiffs failed to appeal the Judgment, this case is closed. The plaintiffs' attempt to recover damages at this juncture in the litigation is extremely belated and therefore unavailing.

Dimarco has now appealed from the May 12, 1993, order and requested that we reverse the district court and direct a trial on damages. Dimarco's brief, without discussing the March 19, 1990, conference, argues that her damage claim cannot have been abandoned since Dimarco was never paid anything in settlement and that such a payment is required under Puerto Rican law in order to compromise a law suit. Dimarco also asserts that nothing shows that the court ever consolidated the injunction and damage phases of the case.

In response, the Board argues that this court lacks jurisdiction over the appeal.[2] Its theory is that the April 23, 1991 order and judgment "finally decided the case"; that no appeal was lodged by Dimarco until two years later in June 1993; and that this two year interval is long past the 30 days allowed for appealing a final judgment. Fed. R.App.P. 4(a)(1). Like Dimarco, the Board's brief casts no light on what actually happened at the March 19, 1990, status conference.

## II.

We think that this appeal presents two related questions: one is whether Dimarco waived or settled her damage claim on or about March 19, 1990; and the other is whether, even if she retained her damage claim after March 19, 1990, her rights were cut off by failing to appeal the judgment entered on April 23, 1991. We consider the issues in that order.

■ 1. On this record it is not possible to tell for certain whether Dimarco's claim for damages was settled or waived on March 19, 1990, but it is possible to say with assurance that the record does not demonstrate such a settlement or waiver. One might expect that, if a plaintiff had agreed to forego a damage claim set forth in the complaint, this would be embodied in a stipulation or evidenced by a transcript statement of counsel. No such document or transcript reference has been supplied or cited to us by the Board.[3] Indeed, in this instance we are not even offered any plausible reason why Dimarco might have wished to surrender her damage claim on March 19, 1990.

The statement in the March 22, 1990, order that "the only remaining issue is whether the plaintiffs passed this exam" is quite ambiguous. It was made at a time when the focus of the litigation was on injunctive relief. Both the existence and the amount of damages could not even begin to be determined until the court decided whether the license had been wrongfully denied and when it should be issued. That order itself does not speak of waiver or settlement of the damage claim.

In its May 12, 1993, order, the district court refers—seemingly for the first time—to an earlier "settlement between the parties,

---

2. We clearly have jurisdiction to review the May 12, 1993, order inasmuch as it is itself final (no further proceedings being contemplated), and an appeal from it was filed within the prescribed period. But we agree with the Board that, if the April 23, 1991, order were itself a final disposition of the entire case, it would be too late now to resurrect the damage claim. This issue is addressed below.

3. Dimarco asserts that the claim could not have been relinquished under Puerto Rico law since there was no payment. Whatever Puerto Rico law may say about out of court settlements, every litigator knows that—in the course of conferences with the judge as a case moves toward trial—complaints are narrowed by agreement and claims are abandoned without any payment. The question is whether that happened here.

without the imposition of damages." This language may be nothing more than the district court's gloss on its earlier March 22, 1990, order. But even if it is treated as a factual finding that Dimarco did settle her damage claim on March 19, 1990, the "finding" cannot resolve this case. Such a finding would still have to rest upon some evidence, and on this record we have *no* evidence of a settlement.

Finally, in an ordinary case the failure to pursue a damage claim for two years after the definitive injunction—here, from April 23, 1991, to January 5, 1993—might be some evidence of an earlier waiver or settlement or even support a dismissal for non-prosecution. Here, however, instead of complying with the injunction, the Board improperly delayed issuance of an adequate license until August 1992. That Dimarco waited four more months before asking for a trial date does not count for much in a five-year-old case.

■ 2. Although we cannot find a waiver or settlement on this record, the possibility remains that Dimarco lost her unsettled, unwaived damage claim because of the judgment entered on April 23, 1991, granting a permanent injunction. If that judgment constituted a final judgment disposing of the entire case, then the failure of Dimarco to pursue an appeal within the prescribed 30-day period would end the case. Fed. R.App.P. 4(a)(1). Such a final judgment might still be reopened by post-judgment motion; but the most familiar grounds (*e.g.*, excusable neglect) require a motion within one year of the judgment. Fed.R.Civ.P. 60(b).

For purposes of "terminat[ing] the action" and starting the appeal clock on the entire case, a judgment is not final if it "adjudicates fewer than all the claims" asserted by a party. Fed.R.Civ.P. 54(b). We have already seen that in this case the judgment did not actually adjudicate all of Dimarco's claims

since, so far as the record reveals, Dimarco still retained in April 1991 a damage claim that had not been waived or settled or tried. Thus, *sub specie aeternitatis* there was on April 23, 1991, an appealable judgment (because of the injunction) but not a final judgment.[4]

In our view, the Board could still rely upon the judgment as final if it had at least *purported* to be final. Thus, if the April 23, 1991, judgment had explicitly terminated the entire case, we would treat that judgment as final, so far as a later attack upon it or attempt to undo it is concerned. The point is that a judgment purporting to be final moves the case toward repose. If errors remain, the proper course for an aggrieved litigant is to appeal, and to do so within the time allowed.

■ Yet in this instance the April 23, 1991, judgment does not on its face say anything to indicate either that it was resolving the damage claim or that it intended to terminate the entire case. A judgment unambiguous on its face is construed as a writing without resort to extrinsic evidence; given doubt, resort may be had to other orders or other evidence ascertainable from the record.[5] In this case, the April 23, 1991, order accompanying the judgment refers to the finding that Dimarco had passed the exam as "the only issue remaining in the case." The quoted statement should have alerted a careful lawyer to the possibility that the accompanying judgment—although not labeled "final"—was intended to dispose of all claims.

But if resort to the accompanying order helps the Board, the record in other respects assists Dimarco. The damage claim had been asserted and never resolved. Nor was it ripe for resolution in April 1991 since no license had issued and thus there was no end point for calculating any damages that might be due. All of the attention of the parties to

---

4. The terminology can be confusing because a judgment may be appealable at once even though not "final" within the meaning of Rule 54(b). *See, e.g.,* 28 U.S.C. § 1292(a)(1) (injunctions). Yet because such situations are exceptions, it is commonplace to use the phrase "final judgment" as a synonym for "appealable judgment," even though the concepts are not identical.

5. *E.g., Security Mutual Cas. Co. v. Century Cas. Co.,* 621 F.2d 1062 (10th Cir.1980); *Eaton v. Courtaulds of North America,* 578 F.2d 87 (5th Cir.1978).

that point had been centered upon injunctive relief of two different types, and only injunctive relief was mentioned in the judgment. The same judgment could have been entered even if the court intended to start a trial on damages the following day. We think, therefore, that a measure of uncertainty remains.

There is no precise formula for construing judgments. But we are reluctant to construe a judgment ambiguous on its face as a final judgment where it could plausibly be read as non-final, where extrinsic evidence does not wholly resolve the uncertainty, and where reading it as final could unfairly forfeit the rights of a party. Here the facts already described leave us in doubt whether the judgment can fairly be construed as final; there is a patent risk of unfairness to Dimarco; and the Board is not unfairly prejudiced by reading the judgment to leave standing any damage claim that Dimarco did not previously waive or settle.

### III.

It remains to consider the course to be followed on remand. For reasons already explained, this record does not establish that Dimarco has waived or settled her damage claim. Still, in view of the failure of anyone to disclose on appeal what happened on March 19, 1990, we think that justice requires that we not foreclose the Board on remand from offering evidence, if it has any, to establish that Dimarco did specifically waive or settle her damage claim at the March 19, 1990, conference. The Board bears the burden of proving such a waiver or settlement. *Cf.* Fed.R.Civ.P. 8(c).

When we speak of the Board offering evidence, we are referring to any *new* evidence that shows that Dimarco on or about March 19, 1990, settled the damage claim or expressed an intention to waive it. If the Board does have any evidence to offer, obviously Dimarco may respond to it, and the district court can then make findings to resolve the issue. If no evidence is offered by the Board, then the court should proceed with the damage claim. Whether the defendants are liable for damages is, of course, a matter on which we express no views.

The order of May 12, 1993, is *vacated* as to Dimarco and the case is *remanded* for further proceedings consistent with this opinion.