238 F.3d 25 (1st Cir. 2001)
 JOANNA DIMARCO-ZAPPA, Plaintiff, Appellee,
v.
EUGENIO CABANILLAS; FEDERICO CED-ALZAMORA; MARY JO GONZ LEZ; EDDIE NIEVES; MAR A SOCORRO CINTR N, Defendants, Appellants,
v.
JUNTA EXAMINADORES DE CORREDORES DE BIENES RA CES, Defendant.
 No. 00-1155
 United States Court of Appeals For the First Circuit
 Heard November 15, 2000
Decided January 19, 2001
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 [Hon. Jaime Pieras, Jr., U.S. Senior District Judge][Copyrighted Material Omitted][Copyrighted Material Omitted]
 John F. Nevares, with whom Smith & Nevares was on brief, for appellants.
 Jane Becker-Whitaker, with whom Law Offices of Jane Becker Whitaker, PSC was on brief, for appellee.
 Before Torruella, Chief Judge, Lynch, Circuit Judge, and Garcia-Gregory,* District Judge.
 TORRUELLA, Chief Judge.
 
 
 1
 Appellants are members of the Puerto Rico Real Estate Examining Board who have been found personally liable in damages for violating the constitutional rights of appellee Joanna DiMarco-Zappa in connection with her application for a real estate license. We find appellants' arguments as to qualified immunity and §a1983 liability respectively unpersuasive or waived at the district court level. We also find that the district court correctly applied the relevant law as to the availability of compensatory and punitive damages, and did not abuse its discretion as to the amount of those damages. As a result, we affirm the district court decision in all respects.
 
 BACKGROUND
 
 2
 Although the district court provided an extensive summary of the procedural history of this case, Zappa v. Cruz, 30 F. Supp. 2d 123, 124-26 (D.P.R. 1998), as has this Court, Harris v. RiveraaCruz, 20 F.3d 507, 509-10 (1st Cir. 1994), we revisit it at some length due to the waiver questions raised by the district court decision.
 
 A. Early Case History
 
 3
 In April 1988, appellee Joanna DiMarco-Zappa ("DiMarco") joined a pending lawsuit[1] against members of the Real Estate Examining Board in Puerto Rico ("the Board"). Defendants-appellants were sued in both their personal and their official capacities pursuant to 42 U.S.C. §a1983.[2] DiMarco's complaint alleged that the policy and actions of the Board and Board members had violated constitutional guarantees. Specifically, the Board had made the English-language version of the real estate broker license examination substantially more difficult than the Spanish-language version. She sought injunctive relief to compel issuance of the license and to require the Board to continue giving the exam in English, as well as compensatory damages for lost income. The complaint further alleged that no applicant had passed the English-language exam and that certain unnamed defendants had made statements indicative of discrimination against non-Puerto Ricans.[3]
 
 
 4
 In March 1989, the district court issued a preliminary injunction requiring the Board to continue offering the exam in both Spanish and English, and to insure that the two versions were equivalent. Harris v. Rivera Cruz, 710 F. Supp. 29 (D.P.R. 1989). In response to an August 1989 pre-trial order, DiMarco provided an analysis indicating differences between the English and Spanish versions of the exams, as well as a showing of mathematical errors on the grading of her individual exam. Id. The Board did not rebut these allegations. Id. The district court granted a permanent injunction requiring the Board to continue giving an equivalent English exam. It then noted in a March 22, 1990 "Status Conference Order" that "the only remaining issue is whether the plaintiffs passed the exam." In a subsequent order, issued Aprila19, 1991, the court concluded that "[DiMarco has] passed the real estate examination." The court stated: "because both parties have previously agreed that this was the only remaining issue in this case, Judgment shall be entered accordingly." The court premised its order on DiMarco's mathematical analysis, including adjustments for mistranslations and ambiguities in the English-language test. No explicit finding was made as to whether an equal protection violation had occurred, whether defendants incurred personal or official liability under §a1983, or whether DiMarco was entitled to monetary damages. The order also did not indicate whether the judgment was final as to all claims, or if the case was finally complete. Harris, 20 F.3d at 509.
 
 
 5
 Although DiMarco was forced to file several motions for contempt to gain compliance, the Board ultimately issued her real estate license in August 1992. DiMarco then requested a date for a trial on damages. The district court, relying on a Maya11, 1993 status conference and on the previous Marcha22, 1990 Status Conference Order, concluded that "[j]udgment was entered in this case based on a settlement between the parties, without the imposition of damages," and that DiMarco's failure to appeal the judgment resulted in closure of the litigation without any damages consideration. DiMarco appealed, seeking an opportunity to pursue her damages claim. This Court reviewed, and found first that "it is not possible to tell for certain whether DiMarco's claim for damages was settled or waived on March 19, 1990, but it is possible to say with assurance that the record does not demonstrate such a settlement or waiver." Id. at 510. We also concluded that the April 23, 1991 judgment was not clearly a final judgment, and thus DiMarco's appeal was timely. Id. at 511. As a result, we remanded, with a direction to the district court to hear any new evidence proffered by the Board as to DiMarco's waiver of her damages claim. Id. at 512. We also "express[ed] no views" as to "[w]hether defendants are liable for damages." Id.
 
 B. Post-Remand Procedural History
 
 6
 On remand, the district court held a hearing to determine whether DiMarco had in fact waived her right to damages. The court concluded that the Board failed to carry its burden based on its failure to produce evidence of any waiver agreement or consideration for a waiver. The district court then set a bench trial[4] on damages and issued an order noting that "the only remaining issue in this case is plaintiff's claim for damages." Accordingly, the parties were instructed to "inform[] the Court of the legal contentions of the parties and their theories of the case" at a future scheduling conference.
 
 
 7
 On December 2, 1996, appellants filed a response to the district court request, in which they argued that "defendants in the instant case acted only in their official capacity" and that "the appearing defendants were not personally involved in the events that gave rise to the complaint." They also claimed that they were entitled to qualified immunity because "the law regarding the constitutional validity of restricting official documents to any given language was unclear and undecided," and thus the constitutional right at issue was not clearly established under Harlow v. Fitzgerald, 457 U.S. 800 (1982).[5] Appellants did not challenge the court's characterization of the upcoming proceeding as solely about damages, nor did they object to the procedure of the district court with respect to that proceeding. In her response, DiMarco pointed out (for not the last time) that appellants had "grossly mischaracterize[d]" the case, and that she had alleged "that the entire process of examining potential real estate brokers was tainted with ethnic bias and that her examination was deliberately misgraded" because of that bias.
 
 
 8
 The Court heard evidence and arguments as to damages on September 18, 1997. The hearing focused entirely on the question of damages, with no evidence presented as to whether defendants were personally involved in the alleged discrimination.
 
 C. The District Court Decision
 
 9
 The district court first concluded that the Eleventh Amendment barred damages claims against appellants in their official capacities. Zappa, 30 F. Supp. 2d at 126-27. It then turned to the question of qualified immunity. In an extensive section, the court reprimanded appellants for "muddl[ing] the right at issue in this case--the right to equal protection of the law--with laws 'regarding a state's prerogative in establishing an official language in which all state government transactions have to be conducted.'" Id. at 127. The court noted that the constitutional violation it had found was not the failure to provide a test in English, but rather "the disparate treatment given to Plaintiffs based on an impermissible classification--Plaintiffs' status as continental Americans." Id. The district court then cited a host of case law demonstrating why such a classification was illegitimate and thus "clearly violate[d] the Equal Protection Clause." Id. at 127-31. Appellants' qualified immunity claim was thus denied. To the extent that the court discussed appellants' personal liability, it noted in its findings of fact that:
 
 
 10
 As outlined in the procedural history of this case, stated at length, supra, it was established long before the bench trial in this case that Defendants . .a. violated DiMarco's constitutional right to equal protection of the law when they discriminated against her based upon her heritage, ancestry and/or national origin.
 
 
 11
 Id. at 131.
 
 
 12
 The court then turned to the issues of compensatory and punitive damages. It found that DiMarco should receive $39,404.43 in compensatory damages for lost income, and $50,000 in compensatory damages for mental and emotional suffering. Id. at 132. It also awarded DiMarco $50,000 in punitive damages based on the "callous indifference to federally protected rights" of appellants in their "willful mistreatment of persons based on their heritage." Id. The district court also awarded DiMarco reasonable attorneys' fees, a decision not appealed here. Id. at 133-35.
 
 
 13
 D. Motion to Alter or Amend [Motion for Reconsideration]
 
 
 14
 Appellants then moved for reconsideration under Federal Rules of Civil Procedure 52(b) and 59(e). Appellants seized on the district court's reliance on the procedural history of the litigation, claiming that the court's interpretation of that history was incorrect because the only previous holding was that "the Board had discriminated against plaintiff."[6] Defendants thus argued that "there is no evidence in the record to support a finding of liability against the individual defendants in their personal capacities on the basis of an alleged discrimination." Appellants cited Kentucky v. Graham, 473 U.S. 159 (1984), for the proposition that the court "had to find each defendant liable, on the merits, for their individual actions."
 
 
 15
 The district court was unpersuaded and found that "[d]efendants are merely repeating old arguments previously considered and rejected, and have failed to demonstrate a manifest error of law or fact." Zappa v. Rivera Cruz, No. 88-0692(JP), slip op. at 6 (D.P.R. Dec. 3, 1999) [hereinafter Reconsideration Order]. The court reasserted that "the question of whether Defendants violated Plaintiff's constitutional right to equal protection of the law was resolved nearly a decade ago." Id. at 8. Moreover, "even if the existence of the settlement agreement were insufficient to demonstrate that Defendants had waived their right to present a qualified immunity argument on the personal involvement of each Defendant, the Court finds that Defendants waived their right to present this argument by failing to raise it in their pre-trial brief, at trial, or in the post-trial brief presented to the Court." Id. at 9. The district court also refused to reconsider its award of compensatory and punitive damages.
 
 
 16
 This appeal, from both the original decision and the Reconsideration Order, followed.
 
 DISCUSSION
 
 17
 I. Section § 1983 Liability and Qualified Immunity
 
 
 18
 Our analysis of this appeal is complicated by the complex procedural history of the litigation and the fact that the litigants have failed to address that procedural history in a doctrinally orthodox manner. Although appellants classify most of their arguments as support for "qualified immunity," a careful reading suggests that their arguments are better categorized as challenges to liability under § 1983. In particular, appellants focus on the district court's determination that their violation of a constitutional right and corresponding liability had been "long established." Zappa, 30 F. Supp. 2d at 131. Given this emphasis, we begin by addressing the impact of this determination, concluding that whether correct or incorrect, appellants' failure to object clearly (or at all) before the district court waives any objection to the finding. We then address appellants' alternate arguments against § 1983 liability, concluding that all such arguments are either waived or lack merit. Finally, we discuss whether the district court erred in refusing appellants qualified immunity.
 
 
 19
 A. The District Court's Discussion of the Procedural History and Waiver
 
 
 20
 Although appellants have not presented or categorized it as such, their most persuasive argument against liability under § 1983 is that the district court never held a hearing on liability, nor did it ever make an explicit finding that appellants were liable. Instead, during the damages phase of the litigation, the district court concluded that "it was established long before the bench trial in this case that Defendants . . . violated DiMarco's constitutional right to equal protection of the law." Zappa, 30 F. Supp. 2d at 131. In the district court's order on reconsideration, the court repeated this finding, referring to "a settlement entered into during a Status Conference" on March 19, 1990. Reconsideration Order at 8. Appellants challenge this conclusion; they argue that the lack of evidentiary support for this determination by the district court requires us to remand for a trial on liability. In short, they argue that because the district court's finding that it had previously determined liability was erroneous, liability does not exist.
 
 
 21
 It is true that nothing in the record indicates a conclusive determination of liability under § 1983. First, the order arising from the 1990 Status Conference only provided that "[t]he parties have agreed that the examination will be given in English, and that the only remaining issue is whether the plaintiffs passed this exam."[7] Second, the April 19, 1991 order concluding that DiMarco had passed the real estate examination and granting an injunction requiring that further tests be given in English made no clear findings of an equal protection violation by appellants. Harris, 710 F. Supp. at 29-31.
 
 
 22
 However, appellants' only objection to the April 19 Order was to claim that DiMarco had not satisfied certain prerequisites to the license or exhausted her administrative remedies. When the court rejected these objections and reiterated its holding, appellants made no effort to emphasize, or even to suggest, that a constitutional violation had not occurred. They did not complain that they misunderstood the state of the litigation. They did not indicate that the wrong defendants were being sued. And although DiMarco responded to the district court's proposed disposition by saying that she still sought damages, the defendants merely agreed that all issues other than whether DiMarco had passed the exam had been settled. At a May 11, 1993 status conference, defendants took substantially the same position.
 
 
 23
 Events between the 1993 status conference and the 1998 damages hearing further support waiver. First, when this Court remanded for consideration of DiMarco's damages claims, the defendants made no effort to make any of these arguments in objection to a damage hearing. Second, although the district court's February 20, 1996 Order stated that "the only remaining issue . . . is plaintiff's claim for damages," and asked the parties to "inform[] the court of the legal contentions of the parties and their theories of the case," thus providing an opening for appellants to make such arguments, appellants' only effort to do so was made in a perfunctory and confusing manner.
 
 
 24
 The defendants press the argument that the district court misunderstood what happened at the 1990 Status Conference and during the subsequent course of the litigation. We have acknowledged the special role played by the writing judge in elucidating the meaning and intendment of order[s] he authored." Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel, 833 F.2d 1059, 1066-67 (1st Cir. 1987). However, the district court may have overstated the import of the order here. Cf. Harris, 20 F.3d at 512.
 
 
 25
 Whether the district court erred or not in its interpretation of the procedural history, it did not err in its determination that appellants had waived any objection to their liability under § 1983, given appellants' clear failure to raise the relevant issues at any time during the long history of this litigation. As was pointed out in oral argument, if liability was not established prior to the bench trial, appellants should have been strenuously objecting that the suit should be dismissed for lack of evidence of liability, not meekly arguing about damages or claiming qualified immunity. They did not do so, and they cannot raise the waived claim before this Court. McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Furthermore, appellants' Motion for Reconsideration does not save them from waiver, even if there was a "manifest error of fact" that would otherwise warrant reconsideration.[8] See CCM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1526 (1st Cir. 1996). Lastly, no exceptions to the "raise-or-waive" rule exist here, for the reasons we explain in subpart B.1.
 
 B. Other Challenges to § 1983 Liability
 
 26
 To state a violation of § 1983, a plaintiff must show that "the official, acting under color of state law,[9] caused the deprivation of a federal right." 42 U.S.C. § 1983. Appellants suggest three ways in which this showing was not made: first, that DiMarco never proved that the individuals sued personally engaged in the acts of intentional discrimination; second, if they did not personally discriminate, DiMarco did not make a sufficient showing to prove supervisory liability under § 1983; and third, that the acts in question were insufficient to constitute the violation of a constitutional right.
 
 1. Personal Involvement
 
 27
 First, appellants claim that they cannot be liable under § 1983 because they were not "personally" responsible for the intentional discrimination (or at least a finding was never made as to their personal responsibility).[10] We take this to be an argument that they are not personally liable because the facts did not show their personal involvement. The district court found that appellants had waived this argument,[11] Reconsideration Order at 9, and we agree.
 
 
 28
 In response to the district court's finding of waiver, appellants point to their pre-trial brief ("Proposed Pre-Trial Order"), dated September 11, 1997, and their conference memorandum ("Memorandum in Compliance with Order"), dated December 2, 1996. The language in these two filings with respect to the issue of personal involvement is exactly the same, and reads, in relevant part, as follows:
 
 
 29
 It is defendant's contention that the appearing defendants were not personally involved in the events that gave rise to the complaint, thus no causal connection exist[s] between them and the damages alleged by plaintiff and no civil rights cause of action will accrue. . . .
 
 
 30
 Appellants did not explain any further why there existed "no causal connection" between them and the alleged acts of discrimination. They made no allegation or showing of who might be personally responsible for the discriminatory actions in question; they did not even make an explicit claim that it was not they who discriminated. Furthermore, they failed to pursue or elaborate on this issue at trial.
 
 
 31
 This Court has repeatedly warned litigants that "arguments not made initially to the district court cannot be raised on appeal." St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Co., 26 F.3d 1195, 1205 (1st Cir. 1994) (quoting Kale v. Combined Ins. Co., 861 F.2d 746, 755 (1st Cir. 1988). Simply noting an argument in passing without explanation is insufficient to avoid waiver. McCoy, 950 F.2d at 22 (two sentences plus citation insufficient to avoid waiver). A party must "provide . . . analysis of the statutory scheme," or "present . . . legal authority directly supporting their thesis," or in the present case, at the very least give a reason why these defendants were not personally liable. Id. Appellants failed to present, much less develop this argument, be it pre-trial, during trial, or in their post-trial brief. They did not meet their "duty to spell out . . . arguments squarely and distinctly." Id. "The [litigant] has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his [defense]." Id. at 23. We will generally not rescue a litigant from a failure to do so. See also Irving, 162 F.3d at 159 (calling for "developed argumentation").
 
 
 32
 Appellants' slightly longer discussion of the issue in their Motion for Reconsideration does not excuse their failure to raise the issue earlier.
 
 
 33
 Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact. . . . The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to . . . advance arguments that could and should have been presented to the district court prior to judgment.
 
 
 34
 Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)). To the extent that appellants' reconsideration motion sought to raise an argument waived at the trial stage, it must necessarily fail.[12] CCM Cable, 97 F.3d at 1526.
 
 
 35
 Appellants' waiver will not be excused based on the limited exceptions to the "raise-or-waive" rule. No "egregious circumstances" or "miscarriages of justice" exist here; given the long-running nature of this litigation and defendants' frequent unwillingness to comply with the orders of the district court, just the opposite exists. St. Paul Fire, 26 F.3d at 1205-06; Correa v. Hospital San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995). Nor are there any of the "extraordinary" circumstances on which we have predicated exceptions in the past. See, e.g., National Ass'n of Social Workers v. Harwood, 69 F.3d 622, 627-30 (1st Cir. 1995).
 
 
 36
 We also find no plain error here that would excuse waiver. "It is normally not error at all, let alone plain error, for a court to ignore a possible claim or defense that a party fails to proffer or pursue." Town of Norwood v. New England Power Co., 202 F.3d 408, 417 (1st Cir. 2000). Given that appellants had been involved in the litigation for over a decade, that the complaint had from the beginning asserted liability over the appellants in their individual capacities, and that the appellants had never engaged in extensive argumentation that it was not they who violated the constitutional rights of plaintiff, the district court cannot be faulted for failing to consider such an argument. In fact, if such an argument had any merit, it would be very surprising to find that the appellants had not raised it early and often.
 
 2. Supervisory Liability
 
 37
 Given that appellants waived any argument as to their personal involvement with the actions in question, the issue of supervisory liability is superfluous. We therefore do not address whether DiMarco proved this theory of liability under § 1983 or whether appellants waived any challenge to such a theory.
 
 3. Violation of a Constitutional Right
 
 38
 Appellants' third approach to avoid liability under § 1983, as we understand it, is that there was insufficient evidence to show that a constitutional right of DiMarco's had been violated. They claim that at no point prior to the district court's decision was there a conclusive finding that DiMarco's test had been graded in an intentionally discriminatory manner. Thus the district court's holding that such discriminatory grading had violated DiMarco's clearly established right to equal protection was in error. As we said earlier, the procedural history of this action shows the argument has been waived.
 
 
 39
 Again, we ask if the waiver should be excused and again conclude it should not be. There was ample evidence that defendants intentionally discriminated. They deliberately made the English language examination more difficult than the Spanish language examination. They also then falsely graded the English examination to give failing scores to those who had in fact passed the examination.
 
 C. Qualified Immunity
 
 40
 Even when an official is personally liable under § 1983, he may be shielded from paying damages when the doctrine of qualified immunity applies. In other words, "[q]ualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Rold n-Plumey v. Cerezo-Su rez, 115 F.3d 58, 65 (1st Cir. 1997) (quoting Nereida-Gonz lez v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993)). Qualified immunity is an affirmative defense, and thus the burden of proof is on defendants-appellants. Harlow, 457 U.S. at 815, 818; Gomez v. Toledo, 446 U.S. 635, 639 (1980). In contrast with their other arguments, defendants did not waive the qualified immunity argument.[13] However, defendants based their immunity argument primarily on the contention that no clearly established right was involved. And as we have said, they have waived the argument that there was no constitutional violation.
 
 
 41
 The district court, which was the finder of fact here, found that "[t]he evidence has demonstrated beyond peradventure that Defendants treated Plaintiffs differently because the latter were continental Americans--Defendants provided them with a different exam than those given to native Puerto Rican applicants and then graded their exam unfairly. They did so to protect their 'rice and beans,' or, more precisely, to assure that jobs in Puerto Rico are held by native Puerto Ricans." Zappa, 30 F. Supp. 2d at 128. The district court thus found that defendants had violated DiMarco's equal protection right by failing "to evaluate both versions of the exam equally, without discriminating against continental Americans." Id.
 
 
 42
 Despite this clear holding by the district court, appellants spent both their brief and their Motion for Reconsideration explaining why there is no "clearly established right" to an English-language test. But they miss the point. The district court found that appellants intentionally discriminated in at least two ways. Having chosen to give an English language examination, they discriminated by making it more difficult. They then discriminated by falsely grading the exam, giving failing grades which were not warranted. To be granted qualified immunity, appellants must show that it is not a clearly established right for a non-Puerto Rican citizen to be free from arbitrary discrimination based on the fact that he or she is not ethnically Puerto Rican. Appellants have not attempted to do so at either the trial or the appellate level. Any such argument is thus doubly waived. See, e.g., Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd., 189 F.3d 1, 17 n.4 (1st Cir. 1999). Any supplementary review would be for plain error only, and, as we summarize below, the district court analysis was essentially correct. See Zappa, 30 F. Supp. 2d at 128-31.
 
 
 43
 First, it is clearly established that the equal protection guarantee of either the Fifth or Fourteenth Amendment applies to Puerto Rico. Posadas de P.R. Assocs. v. Tourism Co. of P.R., 478 U.S. 328, 331 n.1 (1985) (citing Examining Bd. v. Flores de Otero, 426 U.S. 572, 599-601 (1976)); Zappa, 30 F. Supp. 2d. at 128. Second, intentional classifications based on national origin, ancestry, and race must withstand the strictest constitutional scrutiny. See, e.g., Adarand Constructors, Inc. v. Pena, 500 U.S. 200, 213-18 (1995); Hern ndez v. Texas, 347 U.S. 475, 479 (1954); United States v. Carolene Prods. Co., 304 U.S. 144, 152 n.4 (1938). It is true, as the district court pointed out, that "the Equal Protection Clause has seldom been invoked to protect 'Americans' from national origin discrimination," simply because "there are few places in the United States where north Americans will be classified as such to their own detriment." Zappa, 30 F. Supp. 2d at 129. However, much as Puerto Ricans may not be discriminated against within the United States based on either their national origin or ancestry, see, e.g., Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987), so too does the guarantee of equal protection include "continental" or "north" Americans in Puerto Rico, cf. Earnhardt v. Commonwealth of P.R., 582 F. Supp. 25 (D.P.R. 1983) (Title VII discrimination action). To the extent that appellants intentionally discriminated against DiMarco because she was from the mainland United States, they violated her clearly established rights and are not entitled to qualified immunity.[14]
 
 II. Damages
 A. Compensatory Damages
 
 44
 Appellants' only challenge to the compensatory damages award is to the $50,000 awarded as compensation for DiMarco's mental and emotional suffering. According to appellants, this Court will not permit such awards without more evidence than the plaintiff's own affidavit as to her suffering.[15] Perez v. Rodriguez-Bou, 575 F.2d 21 (1st Cir. 1978).
 
 
 45
 Appellants misread Perez, a decision issued in the context of a district court's discretionary refusal to award more than $1 of damages. In Perez, we said:
 
 
 46
 We have suggested that "in a civil rights action a plaintiff who proves only an intangible loss of civil rights or purely mental suffering may . . . be awarded substantial compensatory damages." Magnett v. Pelletier, 488 F.2d 33, 35 (1st Cir. 1973). However, we have never indicated that such damages must be awarded for either intangible loss or mental distress.
 
 
 47
 Id. at 25 (emphasis added). We then noted that the plaintiffs in Perez had failed to provide "evidence of actual injury" other than their own statements, and that lacking evidence of "loss of employment," "delay in meeting academic requirements," "significant harm to plaintiffs' reputation," or "medically cognizable psychological distress," "courts are not inclined to award compensatory damages for general mental distress." Id. (citing Stolberg v. Members of Bd. of Trs. for State Coll. of Conn., 474 F.2d 485 (2d Cir. 1973).
 
 
 48
 Unlike the court in Perez, the district court here found evidence to support compensatory damages for mental suffering. The district court has broad discretion to determine damages. McKinnon v. Kwong Wah Rest., 83 F.3d 498, 506 (1st Cir. 1996). In general, this Court will not override a damage determination unless the award is "unsupported by the evidence, grossly excessive, or shocking to the conscience." Id.; see also Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 266-67 (1st Cir. 1987) (upholding $15,000 award). As appellants have adduced no evidence to suggest that any of these tests are met, we uphold the district court's award of compensatory damages for mental suffering.
 
 B. Punitive Damages
 
 49
 Appellants' final claim on appeal is that the punitive damage award was unsupported by either the district court's findings of fact or the evidence. Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1982). Such indifference "pertain[s] to the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. American Dental Ass'n, 527 U.S. 526, 535(1999).[16] Although evidence of "egregious or outrageous acts" may support an inference of the requisite "evil motive," id. at 538, the guiding inquiry is whether the defendant "acted in the face of a perceived risk that [his] actions will violate federal law," id. at 536. The district court concluded that "the willful mistreatment of persons based on their heritage" was a clear "example of callous indifference," Zappa, 30 F. Supp. 2d at 132, and we must agree. The extent of federal statutory and constitutional law preventing discrimination on the basis of ethnicity or race suggests that defendants had to know that such discrimination was illegal, and that in misgrading DiMarco's test they exhibited "reckless and callous indifference" to her federal rights, if not evil intent. Moreover, as the district court explained, acts of intentional discrimination are just the sort of conduct that punitive damages aim to deter. See, e.g., Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 17-18 (1st Cir. 1999); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 205-06 (1st Cir. 1987); Heritage Homes of Attleboro v. Seekonk Water Dist., 648 F.2d 761, 763 (1st Cir.), vacated on other grounds, 454 U.S. 807 (1981). Given the district court's findings, we cannot find that the court abused its discretion in granting punitive damages. See Rowlett, 832 F.2d at 205-06. Nor do we find that a damage award of $50,000 is excessive, particularly given the failure of appellants to suggest any reason why we should do so. See, e.g., Criado v. IBM Corp., 145 F.3d 437, 445 (1st Cir. 1998) (total damage award of $300,000 upheld); Fishman v. Clancy, 763 F.2d 485, 489-90 (1st Cir. 1985); cf. Rowlett, 832 F.2d at 207 (finding $3,000,000 award excessive given little evidence of discrimination).
 
 CONCLUSION
 
 50
 Because appellants never challenged their liability under § 1983 at the trial level, and their arguments as to qualified immunity from that liability are misplaced, we affirm the district court's holdings as to those issues. We also find that DiMarco adduced sufficient evidence to support the entire compensatory damage award, and that the court did not abuse its discretion in awarding punitive damages of $50,000.
 
 
 51
 Affirmed. Costs to appellants.
 
 
 
 Notes:
 
 
 *
 Of the District of Puerto Rico, sitting by designation.
 
 
 [1]
 The original plaintiff, John Fulcher Harris, has long since abandoned the suit. Zappa, 30 F. Supp. 2d at 126 n.6.
 
 
 [2]
 The named defendants were Hector Rivera-Cruz (Puerto Rico Secretary of Justice), Maria Socorro Cintron (President of the Board), Awilda Vilches-Reyes (Secretary of the Board), and Board members Eddie Nieves, Mary Jo Gonz lez, Federico Cedo-Alzamora, and Eugenio Cabanillas. Rivera-Cruz was later dismissed from the case. Zappa, 30 F. Supp. 2d at 125 n.4.
 
 
 [3]
 DiMarco claimed that a person at the Board's offices had asked her "how do you think you are going to sell real estate in Puerto Rico if you don't speak Spanish," and had also told her that the reason for the refusal to give further exams in English was that "we have to worry about our people eating rice and beans."
 
 
 [4]
 Both parties had waived their right to a jury trial.
 
 
 [5]
 In their "Proposed Pretrial Order" of September 11, 1997, defendants simply repeated this language without further argument.
 
 
 [6]
 Although appellants had at one point argued that they were only liable in their official capacity, as opposed to their personal capacity, at no time prior to the Motion for Reconsideration had they drawn a distinction between the Board and its members for purposes of liability.
 
 
 [7]
 Because no transcript or record of that conference exists, we are left only with the district court's characterization of that proceeding. Harris, 20 F.3d at 510-11. As we shall see, whether that characterization is accurate does not impact our decision.
 
 
 [8]
 We have not found that such a manifest error existed; we simply note that even such an error could not save appellants here.
 
 
 [9]
 Puerto Rico law is the functional equivalent of "state law" with respect to claims pursuant to § 1983. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 n.1 (1st Cir. 1999).
 
 
 [10]
 Appellants hint at a corollary to this argument, i.e., that they were sued in their official capacity as supervisors and thus cannot be liable personally because § 1983 does not allow personal liability under a theory of respondeat superior. Alternatively, appellants suggest in their Motion for Reconsideration that the district court held the Board liable as an entity, and thus made no finding as to their liability in either an official or personal capacity. In response, we simply note that appellants have waived any argument to the effect that no personal liability exists, no matter how they attempt to characterize such an argument at this stage.
 
 
 [11]
 Although the district court analyzed the argument in the context of the qualified immunity it purported to show, we do not believe the context matters for purposes of determining waiver. If anything, the failure to accurately categorize the argument supports the district court's finding that it was waived. See Irving v. United States, 162 F.3d 154, 159 (1st Cir. 1998).
 
 
 [12]
 Appellants cannot argue that we cannot find waiver because their argument is a response to the district court's (potentially incorrect) determination with respect to liability, and thus could not have been made prior to the Motion for Reconsideration. "Not only can parties not claim error based on arguments which the district court never had a chance to timely consider, but courts are also entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." CCM Cable, 97 F.3d at 1526.
 
 
 [13]
 As part of their argument for qualified immunity, appellants make the misplaced argument that because "they were not personally involved" in the discrimination in question, they are due qualified immunity. Appellants cite Kentucky v. Graham for this proposition. However, Graham simply displays appellants' confusion in full force. "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. Qualified immunity does not displace the liability, but instead displaces the consequences of that liability; that is, it frees the official from paying damages. SeeHarlow, 457 U.S. at 818; Graham, 473 U.S. at 159 ("In an official-capacity action, [personal immunity] defenses are unavailable."). Appellants' argument is not an argument for qualified immunity; it is instead a challenge to the basis for DiMarco's § 1983 claim against appellants. And, as we demonstrated above, appellants waived such a challenge.
 
 
 [14]
 Note that the Puerto Rico Federal Relations Act, 48 U.S.C. § 737, mandates that the "rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a state of the Union." In short, DiMarco was entitled to ply her trade in Puerto Rico on terms of substantial equality with citizens of Puerto Rico. See, e.g., Trailer Marine Transp. Corp. v. Rivera V zquez, 977 F.3d 1, 7 (1st Cir. 1992).
 
 
 [15]
 DiMarco admittedly did not consult a psychiatrist or solicit expert testimony from a mental health professional.
 
 
 [16]
 Although Kolstad involved a claim under 42 U.S.C. § 1981a, we have held that "Kolstad's teachings are fully applicable to punitive damages under section 1983." Iacobucci v. Boulter, 193 F.3d 14, 26 n.7 (1st Cir. 1999).