CERTAIN UNDERWRITERS AT LLOYDS; Institute of London Underwriters, Subscribing to Insurance Policy Nos. RBH 9428 and 89H236–006, Plaintiffs–Appellees,

v.

KENCO MARINE TERMINAL, INC., Plaintiff–Intervenor–Appellant,

v.

MICHAEL BANKS TOWING; Michael Banks, et al., Defendants.

No. 93–36019.

United States Court of Appeals, Ninth Circuit.

Submitted December 8, 1995.*

Decided April 15, 1996.

---

* The panel unanimously finds this case suitable for decision without argument. Fed. R.App. P. 34(a) and Ninth Cir. R. 34–4.

Joseph S. Stacey, Le Gros, Buchanan & Paul, Seattle, Washington, for plaintiffs-appellees.

John E. Casperson, Faulkner, Banfield, Doogan & Holms, Seattle, Washington, for plaintiff-intervenor-appellant.

Before: FLETCHER, KOZINSKI, and LEAVY, Circuit Judges.

FLETCHER, Circuit Judge:

Kenco Marine Terminal, Inc. appeals from an order of the district court allocating equally between Kenco and Certain Underwriters at Lloyds ("Lloyds") the costs of maintaining *in custodia legis* a vessel arrested by Lloyds, and later rearrested by Kenco, for satisfaction of maritime liens. We have jurisdiction under 28 U.S.C. § 1291 and, because the district court did not abuse its discretion, we affirm.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

On March 8, 1993, Lloyds filed a complaint *in rem* against the *M/V Garnet Banks* in the U.S. District Court for the Western District of Washington, alleging torts by the vessel's owners against a vessel insured by Lloyds, claiming a maritime lien against the *M/V Garnet Banks,* and seeking damages of over $51,000.[1] The complaint also sought an *in rem* warrant of arrest for the *M/V Garnet Banks.* The following day a warrant of arrest issued and the court appointed a custodian to substitute for the U.S. Marshal, and on March 10 the vessel was arrested by the U.S. Marshal at Kenco Marine Terminal, where it had been moored since November 1992.

On April 27, 1993, the court allowed Kenco to intervene on its claimed maritime lien against the *M/V Garnet Banks* for nearly $5,000 of unpaid pre-arrest moorage charges and sought the sale of the vessel. On May 18, 1993, the U.S. Marshal again arrested the vessel, this time on behalf of Kenco.

On July 2, 1993, the district court ordered the interlocutory sale of the vessel, and the vessel was sold on July 27, 1993 for $5,000.

On August 6, 1993, Kenco moved the court for an order awarding it $2,745.60 in custodial costs to be paid from the proceeds of the sale. On August 23, 1993, Lloyds moved for an order holding Lloyds and Kenco equally liable for the *in custodia legis* costs. Lloyds had paid $13,806 in custodial expenses, including U.S. Marshal's fees and expenses for the arrest and sale, fees for the substitute custodian's services, and insurance for the substitute custodian's legal liability. On September 22, 1993, the district court ordered Lloyds and Kenco to share the custodial costs equally and ordered the $5,000 sale proceeds paid to Lloyds.

## STANDARD OF REVIEW

◼ The district court's order regarding the apportionment of costs incurred while the vessel arrested in this *in rem* action was *in custodia legis* is governed by Admiralty Rule 131(d) of the Western District of Washington, which gives the district court discretion

---

[1] Lloyds also complained *in personam* against the owners of the vessel, Michael Banks Towing, Michael Banks, Garnet Leigh, Inc., M.T. Banks, Inc., and Does 1 through 10. After the arrest and interlocutory sale of the vessel, Lloyds and Kenco on March 31, 1994 stipulated to the voluntary dismissal of defendant Michael Banks. On July 5, 1994, the district court, noting that the *res* had been sold and Banks dismissed, and in the absence of objection by any party, dismissed all remaining claims without prejudice.

to order the allocation of the costs of custody. We therefore review its order for abuse of discretion.

## DISCUSSION

The district court did not abuse its discretion, as Kenco argues, by adopting a "rule of law" for the allocation of *in custodia legis* costs among arrestors in *in rem* admiralty suits. The district court was not barred by the local rules from adopting a rule of law, and in any case it did not do so.

■ Kenco asserts that the district court was required to decide Lloyds' motion for sharing of costs not by adopting a rule of law but by applying equitable principles and considering all the facts of the case before it. It premises this duty of the district court on a local admiralty rule. W.D. Wash. Adm. R. 131. That rule governs claims and intervention in admiralty cases, and the last sentence of section (d) of Rule 131 provides that

> [u]pon motion by any party, a judicial officer may order that security deposits or deposits for marshal's fees and expenses of custody be paid or shared by any party who has arrested, attached or garnished property, including parties claiming and intervening as provided herein, such payment of sharing to be in amounts or proportions as determined by the judicial officer.

The district court did not abuse its discretion in applying this rule. The court's order does not purport to adopt a "rule of law" for all cases, as Kenco asserts. The order merely states that "[t]he court finds that the costs in custodia legis should be borne equally by the arresting parties. *See Donald D. Forsht Associates., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556 (11th Cir.1987)." Neither the language of the order nor the citation to *Forsht* implies in any way that all future cases are to be decided in accordance with a rule of equal sharing among the arresting parties in those cases.

By citing *Forsht*, the district court did no more than signal its agreement with, and application of, that case's reasoning to a set of facts presenting similar equitable considerations. The *Forsht* court reasoned that

By arranging for a substitute custodian for the vessels, Transamerica performed two valuable services. First, it safeguarded the vessels, thereby protecting the value of the property, and two, it provided for such safekeeping at a cost lower than that charged by the United States Marshal's office. Clearly these two services benefited *all* claimants interested in the vessels by maximizing the potential proceeds recoverable from the sale of the vessels. We find it inconceivable that by being the first party to arrest the vessels, and thereby being the party to arrange for a substitute custodian, Transamerica should become wholly liable for the administrative expense of maintaining the vessels.

821 F.2d at 1561. The court also noted that if the proceeds of the sale of an arrested vessel "are adequate to cover administrative expenses and the other claims, *all* claimants 'pay' the administrative expenses because payment of those expenses diminishes the fund from which the claimants receive their pro rata distribution". *Id.* at 1562. These certainly are adequate reasons to justify the district court's decision below, and it was not an abuse of discretion for the district court to have used a citation to *Forsht*, rather than its own explication, to support its decision.

## CONCLUSION

Because the district court did not abuse its discretion in requiring Kenco and Lloyds to share the custodial expenses for arrest of the *M/V Garnet Banks* equally, its order is **AFFIRMED.**