**Not for Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 01-1813

LUBRICANTES VENOCO, INTERNATIONAL, C.A.; FREDDY SANTANA;
OSCAR J. FERNANDEZ ET AL.; JESUS PENALVER; JOSE BERRIOS;
TREVOR ELLIOT; YURIY KOSINKY; VALIERY TERESCHENKO; KLAUS LINDNER;
BERNARD VILUAN; PRIMITIVO MINGUITO; GRISELDA SALDANA;
RAMON CASTILLO; JUAN VARGAS; YIMI PALACIOS; TRANSCARIBBEAN
MARITIME CORP; OCEAN INTERNATIONAL CORP.,

Plaintiffs,

PEREZ Y CIA. DE PUERTO RICO, INC.
Plaintiff, Appellant,

v.

M/V NEVERIS, HER ENGINES, FURNITURE, APPAREL, ETC., IN REM;
LIMA-SOL SHIPOWNERS; SHIPCO MARINE, MANAGEMENT,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jose Antonio Fuste, U.S. District Judge]

Before

Lynch, Circuit Judge,
Coffin and Campbell, Senior Circuit Judges.

Paul E. Calvesbert-Borgos with whom Francisco Javier Ortiz
García and Calvesbert Law Offices PSC were on brief for appellent.
Antonio J. Ramírez-Aponte with whom Manuel Moreda Toledo and
McConnell Valdés were on brief for appellees.

March 21, 2003

**CAMPBELL**, <u>Senior Circuit Judge</u>.  The Appellant, Perez Y Cia. De Puerto Rico, Inc. ("Perez") appeals from the district court's order granting Robert Fyffe's unopposed motion for $206,687.15 in <u>custodia</u> <u>legis</u> expenses that he incurred while acting as substitute custodian to the M/V RIO NEVERI.[1]  Concluding that Perez's objections to the award of expenses were untimely, we affirm.

## I.      BACKGROUND

The events leading up to this action begin with the arrest by creditors of the M/V RIO NEVERI.  On July 6, 1998, Lubricantes Venoco Internacional, C.A. ("Venoco") filed a Verified Complaint in the United States District Court for the District of Puerto Rico initiating an <u>in</u> <u>rem</u> action against the M/V RIO NEVERI and an <u>in</u> <u>personam</u> proceeding against its owners, Lima-Sol Shipowners and Shipco Marine Management.  Venoco's complaint alleged that the defendants owed it $50,000 for goods provided and services rendered and sought the seizure and arrest of the RIO NEVERIS to enforce its maritime lien.

---

[1]Perez's notice of appeal states that Perez is appealing from the district court's March 30 order awarding Fyffe $14,369.42 and from the district court's December 6 order awarding Fyffe $206,687.15 in <u>custodia</u> <u>legis</u> expenses.  However, in its appellate brief, Perez makes no mention of, or argument regarding, the March 30 order.  As a result, we consider the issue waived.  <u>Pratt</u> v. <u>United States</u>, 129 F.3d 54, 62 (1st Cir. 1997)("It is firmly settled in this circuit that arguments not advanced and developed in an appellant's brief are deemed waived.").

Shortly after filing the complaint, Venoco moved for appointment of a substitute custodian. Venoco requested the court to name Robert Fyffe as substitute custodian in lieu of the U.S. Marshals. The court granted the motion. As substitute custodian Fyffe was responsible for the supervision and safekeeping of the vessel. Venoco, as arresting party, assumed responsibility for the expenses Fyffe incurred while acting as substitute custodian. As mandated by law, Venoco also deposited $10,000 with the U.S. Marshals to cover the required insurance premiums. See 28 U.S.C. § 1921(a)(1)(E) (1994 & Supp. VI).[2]

On July 30, 1998, Perez intervened in the action claiming a maritime lien for ship repair and services totaling $250,000.[3] After conferring with Venoco, Perez agreed to divide the substitute custodian expenses proportionally according to each party's claim. Because Perez's claim was larger, Perez agreed to pay 80 percent of Fyffe's expenses.

On August 28, 1998, the U.S. Marshals seized the RIO NEVERI and placed the vessel in Fyffe's custody. Less than a month later, on September 21, 1998, during Hurricane George, the RIO

---

[2]28 U.S.C. § 1921(a)(1)(E) provides that the United States marshal shall routinely collect, and a court may tax as costs, fees for the keeping of seized property including the costs of insurance.

[3]A host of other parties intervened as well, including the RIO NEVERI's crew, the ship's agent and the Puerto Rico Port Authority. Their claims are not relevant to the current dispute.

NEVERI broke loose from her moorings and grounded in the mud in San Juan Harbor. The parties scuffled over who was responsible for the expenses related to refloating the vessel. Neither Perez nor Venoco was willing to front the money for the refloating and Fyffe was unable to obtain funds from any other source. Perez and Venoco also stopped paying Fyffe's expenses, believing his negligence had allowed the RIO NEVERI to run aground.

On December 10, 1998, the United States, upon its own motion, was authorized to refloat and secure the vessel. For reasons not clear on the record, however, the United States took no action to refloat the vessel and the RIO NEVERI remained grounded until Fyffe obtained a court order to begin salvage operations in July 1999. It is undisputed that the parties agreed that the $130,000 fee payable to the salvor, Dimitrious Kalogerakis, would be paid from the proceeds of the sale of the vessel as an "administrative cost." Kalogerakis successfully salvaged the RIO NEVERI and returned the vessel to its mooring.

The RIO NEVERI's grounding resulted in the bringing of two separate court actions in the District Court for the District of Puerto Rico, Frontier Insurance Company v. Lubricantes Venoco Internacional, C.A., et. al., Civ. No. 99-1292 and Perez Y Cia. de Puerto Rico, Inc. v. Fyffe, Civ. No. 99-2055. In both actions the plaintiffs alleged that the grounding of the RIO NEVERI was a result of negligence and claimed damages arising from the

-4-

negligence.  In October 1999, Perez moved to consolidate the two actions with the in rem action against the RIO NEVERI.  Judge Fuste, the judge presiding over the in rem action, denied the motion to consolidate.  Perez did not appeal from the denial.

Because the owners of the RIO NEVERI had not stepped forward to  claim the vessel and pay the lienors, the court ordered the vessel's sale.  While at the time of its arrest the RIO NEVERI had been appraised for $1,600,000, her value had significantly depreciated because of the considerable damage she had sustained from the grounding.  The sale of the RIO NEVERI netted only $163,000.[4]  On March 15, 2000, the court approved the sale and ordered that each of the parties interested in the sale proceeds "shall file a separate motion containing an invoice in the form of a verified claim for payment as *custodia legis* expenses" within thirty days from the date of the order.  Almost immediately, Perez and Venoco filed separate motions requesting custodia legis expenses of $84,836.66 and $20,481.28 respectively.  Prior to the confirmation of the sale, Fyffe had submitted to the court a motion requesting $60,478.12 from the proceeds of the sale to cover the additional expenses he allegedly incurred related to the reflotation of the vessel.

---

[4]The actual sale price of the vessel was $148,000.  However, this was augmented by a $15,000 deposit forfeited by an earlier, defaulting bidder.

On March 30, 2000, the court issued a "final order" distributing the sale proceeds.  As previously agreed to by the parties, Kalogerakis, the salvage operator who refloated the RIO NEVERI, received $130,000.  The U.S. Marshal received $10,630.58 for insurance coverage that it was required by statute to maintain but that Venoco and Perez had failed to pay.  A.L. Burbank received $8,000 for the incidental advertising expenses related to the sale of the vessel.  Fyffe received the remaining $14,369.42.  The court further ordered:

> The balance of the custodial expenses incurred by Robert Fyffe will be paid by the plaintiff and the intervening plaintiffs in any amount to be agreed by the parties or further disposed of by the court after April 14, 2000.
>
> It is further **ORDERED** that this case is closed, subject to any further adjustment on claims needing court intervention after April 14, 2000, and without prejudice of a hearing to resolve any arising dispute.

In response to the order of distribution, Perez, joined by Venoco, filed a motion for reconsideration "of such part of the final order or distribution of sale proceeds awarding Robert Fyffe $14,369.42 of the sales proceeds."  The motion was denied.  Neither Perez nor Venoco opposed the portion of the order that required Fyffe's remaining expenses to be paid by Venoco, Perez, and the other intervening plaintiffs.

On April 14, 2000, within the 30 day period specified in the March 15, 2000 order, Fyffe submitted a verified claim for

additional custodia legis expenses in the amount of $206,687.15.
Fyffe requested that the court declare the plaintiff and
intervening plaintiffs "jointly liable to Fyffe for his fees and
expenses" and "severally liable to each other for contribution in
proportion for [sic] their respective claims."  In response, the
United States filed a motion supporting Fyffe's claim for custodia
legis expenses.  The government submitted that the plaintiff and
intervening plaintiffs "are jointly and severally liable to Fyffe
. . . for Fyffe's *custodia legis* expenses . . . ."  Fyffe also
filed a motion requesting an extension of time to oppose Perez's
and Venoco's requests for custodia legis expenses.  Neither Perez
nor Venoco filed an opposition to Fyffe's request nor did either
party request an evidentiary hearing.

On December 6, 2000, after nearly eight months had
elapsed since Fyffe's additional claim was filed, the court granted
Fyffe's unopposed request for expenses.[5]  Within days, Perez moved
for reconsideration of the court's December 6 order.  Fyffe replied
to the motion claiming, inter alia, that Perez had waived its right
to contest the appropriateness of the expenses or the calculation
by failing to oppose his April 14 motion.  On April 3, 2001, the

---

[5]The disposition of this claim appears to have resolved the
remaining outstanding claims in the case, leaving the December 6
order as final and appealable pursuant to 28 U.S.C. § 1291.
According to the docket, as of December 6, 2000, all the parties
claims had been addressed and orders entered disposing of remaining
matters.  See Fed. R. Civ. P. 54(b).

-7-

court denied Perez's motion. This appeal timely followed. <u>See</u> Fed. R. App. P. 4(B)(i).

## II.      DISCUSSION

The central issue is whether, after allowing Fyffe's claim for additional expenses to which Perez had filed no opposition, the district court abused its discretion in denying Perez's motion for reconsideration.[6] Fyffe insists that Perez waived its arguments objecting to the district court's award of expenses when it failed to timely oppose Fyffe's request and that the district court properly exercised its discretion in refusing to reconsider the matter.

Generally, claims not timely made during the pendency of a case, and raised for the first time thereafter in a motion for reconsideration, are deemed waived on appeal. <u>DiMarcoi-Zappa</u> v. <u>Cabanillas</u>, 238 F.3d 25, 33 (1st Cir. 2001) ("To the extent that appellants' reconsideration motion sought to raise an argument

---

[6]We assume Perez's motion for reconsideration was brought pursuant to Fed. R. Civ. P. 59(e) as a motion to alter or amend the judgment. <u>See</u> <u>Aybar</u> v. <u>Crispin-Reyes</u>, 118 F.3d 10, 13 n.3 (1st Cir. 1997)(stating "regardless of how it is characterized, a post-judgment motion made within ten days of the entry of judgment that questions the correctness of a judgment is properly construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e)."). Rule 59(e) does not provide a vehicle for a party to present arguments that "could and should have been presented to the district court prior to the judgment." <u>Id.</u> at 16. Perez does not appeal from the district court's denial of its motion for reconsideration but from the district court's December 6, 2000, order granting Fyffe's motion for <u>custodia</u> <u>legis</u> expenses. <u>See also</u> n.1, <u>supra</u>.

waived at the trial stage, it must necessarily fail."); <u>CMM Cable</u> <u>Rep, Inc.</u> v. <u>Ocean Front Props., Inc.</u>, 97 F.3d 1504, 1526 (1st Cir. 1996) (finding no merit in appellant's argument that its arguments were preserved because they were advanced in a motion for reconsideration). As we have explained before, appealing parties cannot claim error based on matters which the district court and the other parties did not have timely chance to consider. <u>See</u> <u>CMM</u> <u>Cable</u>, 97 F.3d at 1526 (citing <u>McCoy</u> v. <u>Mass. Inst. of Tech.</u>, 950 F.2d 13, 22 & n.7 (1st Cir. 1991)).

Perez's arguments were not timely raised during the proceedings below. Since 1966, the Federal Rules of Civil Procedure have applied to actions in Admiralty. <u>See</u> Fed. R. Civ. P. 1; Rule A, Supplemental Rules for Certain Admiralty and Maritime Claims. While the Federal Rules of Civil Procedure set forth the rules for calculating specified time limits, it is the local rules of the district courts that establish the time frames within which parties must respond to motions. <u>See</u> <u>Viqueira</u> v. <u>First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). Under the local rules of the District of Puerto Rico, Perez had ten days after service of the motion within which to file an opposition to Fyffe's motion requesting additional <u>custodia</u> <u>legis</u> expenses. D.P.R. Loc. R. 311.5; <u>see also</u> <u>Viqueira</u>, 140 F.3d at 16. It did not do so. The local rule is unambiguous. <u>See</u> <u>United States</u> v. <u>Fray</u>, 145 F.3d 1, 4 (1st Cir. 1998). Throughout the <u>in</u> <u>rem</u> proceeding, the parties adhered to

this ten-day rule or, in appropriate circumstances, requested an extension of time for filing responses. Perez did neither here. In any event, Perez concedes that the objections first made in its motion for reconsideration, filed after the court had allowed Fyffe's additional claim and filed many months after Fyffe had filed that claim, were well out of time.

Perez further concedes that matters presented for the first time in a motion for reconsideration are not timely raised nor are they ordinarily deemed to be preserved for appellate review. However, Perez contends that we should entertain his objections because the district court exercised its discretion to review them, thus impliedly excusing their untimeliness.[7] See Quest Med., Inc. v. Apprill, 90 F.3d 1080, 1087 (5th Cir. 1996)(stating that if a district court exercises its discretion to consider issues raised for the first time in a post-trial brief then the issues may be considered to have been properly raised below).

Whatever can be said for Perez's theory, it is of no help to Perez here. The record in no way supports Perez's suggestion that, after Perez moved for reconsideration, the district court

---

[7]We note that Perez presents this argument only in its Reply Brief. Normally, arguments raised for the first time in a reply brief come too late to meet the requirement that appellate arguments must be briefed. Frazier v. Bailey, 957 F.2d 920, 932 n. 14 (1st Cir. 1992). While we reject Perez's argument as lacking in merit, Perez's failure to have included it in its main brief may constitute a separate ground for rejection.

actually considered the motion on its merits. The district court, without comment, summarily denied Perez's motion for reconsideration. Perez argues that "[i]t is clear that the District Court accepted Perez's excuses[] because it took almost three (3) months for the District Court to finally deny Perez's motion for reconsideration." We see no reason why the passage of three months between the submission of the reconsideration motion and the district court's ruling thereon should be taken to indicate the court's consideration of the merits of the motion. Most likely, the court was simply busy with other matters.

As a further reason for us to find the district court had decided the reconsideration motion on the merits, Perez points out that the court allowed it to reply to Fyffe's opposition to the motion. But again there is no reason why this isolated fact should be taken to indicate that the court decided to excuse Perez's untimeliness and delve into the merits of Perez's objections to Fyffe's claim. Fyffe asserted in his opposition to Perez's motion for reconsideration that Perez's arguments were untimely and had, therefore, been waived. By permitting a reply the district court suggested no more than that it sought to be fair and allow Perez to counter Fyffe's waiver argument or tender whatever other excuse it could. There is nothing to show that the district court actually reached the merits of Perez's objections to Fyffe's expense claims.

In extraordinary circumstances, courts have recognized an exception to the raise-or-waive rule. DiMarcoi-Zappa, 238 F.3d at 34. Exceptions have been allowed where a waived argument is "'so compelling as virtually to insure appellant's success,'" and a "'gross miscarriage of justice'" would result from our failure to address it. Am. Auto. Mfr. Ass'n v. Comm'r, Mass. Dep't Envtl. Prot., 31 F.3d 18, 26 (1st Cir. 1994) (quoting Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979)); see also Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1996). Perez's situation does not fit within this unusual and narrow category of exceptions. See Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995) ("[T]he exceptions are few and far between, and appellate discretion should not be affirmatively exercised unless error is plain and the equities heavily preponderate in favor of correcting it."); Ondine Shipping Corp. v. Cataldo, 24 F.3d 353, 356 (1st Cir. 1994) ("this is a long-odds exception that must be applied sparingly").

The arguments Perez now presents against the court's allowance of Fyffe's expenses are far from being so compelling as to virtually insure their success. Perez contends that it was wrong for the district court to award custodia legis expenses without first holding an evidentiary hearing. In Perez's view, a hearing was required since Perez "attacked the veracity and reasonableness of Fyffe's claims." But before issuing its order

-12-

the district court had no way to know that Perez attacked the veracity and reasonableness of the claims since Perez had not filed an opposition to them.  There is no pro forma requirement that, in each and every case, a district court hold an evidentiary hearing prior to awarding custodia legis expenses.[8]  Taino Lines, Inc. v. M/V Constance Pan Atl., 982 F.2d 20, 25 (1st Cir. 1992).  The local rules of the district court make clear that an unopposed motion will be considered and decided without a hearing, unless otherwise directed by the court.  D.P.R. Loc. R. 311.9.  It was not plain error for the court to rule without a hearing in the circumstances as they appeared at the time.  Id.

Perez also contends that the district court was without authority in the in rem proceeding to award custodia legis expenses in excess of the sale proceeds.  Perez proffers Forscht Associates, Inc. v. Transamerican ICS, Inc., 821 F.2d 1556 (11th Cir. 1987), for the proposition that once the proceeds of the sale of the RIO NEVERI were exhausted, "the unpaid custodia legis fees must become the object of a separate action for breach of contract lodged by the substitute custodian."  But Forscht does not stand for such a proposition.  To the contrary, the Forscht court concluded that a substitute custodian could seek payment through the in rem action

---

[8]Contrary to Perez's argument, the local admiralty rules for the District of Puerto Rico do not mandate that a district court hold a hearing prior to awarding expenses.  LAR(e)(12)(d) provides only that a district court "may" schedule a hearing.

-13-

or through an action for breach of contract. Id. at 1562; see also Certain Underwriters at Lloyds v. Kenco Marine Terminal, 81 F.3d 871, 872 (9th Cir. 1995) (ordering parties to split custodia legis expenses in excess of sale proceeds as part of in rem proceeding).

Perez's remaining arguments attack the correctness of the underlying award of expenses and the district court's refusal to transfer Fyffe's claim for expenses to the collateral litigation. As already discussed, the district court was entitled to resolve the matter of custodia legis expenses in the in rem proceeding. As to Perez's claims that the district court erred when it awarded Fyffe $206,687.15 in custodia legis expenses and Perez's companion request for this court to vacate the December 6, 2000 order, we find no plain error in the district court's award. See Town of Norwood v. New England Power Co., 202 F.3d 408, 417 (1st Cir. 2000)("It is normally not error at all, let alone plain error, for a court to ignore a possible claim or defense that a party fails to proffer or pursue.").

For like reasons, we can detect no "gross miscarriage of justice." See Am. Auto Mfr. Ass'n, 31 F.3d at 26. It should have come as no surprise to Perez that it was at risk of being held partially responsible for the remaining custodia legis expenses. It is a well-established tenet of admiralty law that the arresting plaintiff and the intervening plaintiffs share in the costs of maintaining the res until resolution of the case. See Beauregard

-14-

Inc. v. Sword Servs. L.L.C., 107 F.3d 351, 353 (5th Cir. 1997); Kenco, 81 F.3d at 873; Forscht, 821 F.2d at 1561; see also D.P.R. LAR (e)(11)(b). Perez agreed to divide the custodian and security fees with Venoco in its August 4, 1998 motion requesting an interlocutory sale of the vessel. Nor should it have been a surprise to Perez that the custodia legis expenses in excess of the sale proceeds were awarded by Judge Fuste in the in rem proceedings. Judge Fuste indicated that he intended to review and award expenses in the in rem proceeding when he specifically requested that the parties submit claims for custodia legis expenses in his March 15 order approving the sale of the RIO NEVERI. Perez and Venoco submitted their own expense requests even though it was evident that the proceeds from the sale of the vessel would be nearly exhausted by the salvage operator's claim and the U.S. Marshal's fees. Nor should it have been a surprise to Perez when the expenses were actually awarded against it. In his March 30 order, Judge Fuste explicitly stated that the balance of the custodial expenses incurred by Fyffe would be paid by Venoco, Perez and the other intervening plaintiffs either as agreed to by the parties "or further disposed of by the court." Unaccountably, Perez remained mute, even after Fyffe submitted, on April 14, 2000, his verified claim for additional custodia legis expenses. Even after the United States filed a motion supporting Fyffe's claim for expenses, and Fyffe filed motions requesting an extension of time

to oppose Perez's and Venoco's claims for <u>custodia</u> <u>legis</u> expenses, Perez did nothing to indicate its opposition. In these circumstances, we find no miscarriage of justice such as would warrant reopening the judgment of the district court.

**III.     CONCLUSION**

The district court's order granting Fyffe's unopposed motion for <u>custodia</u> <u>legis</u> expenses is **<u>affirmed</u>**.